**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Danny Nick PORTER,
Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas Lynn PORTER,
Defendant–Appellant.**

Nos. 89–5623, 89–5669.

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1990.

Decided Aug. 2, 1990.

Russell Doyle Ghent, Spartanburg, S.C., argued (Weyman H. Dodson, Greenville, S.C., Parks N. Small, Federal Public Defender, Thomas P. Simpson, Columbia, S.C., on brief), for defendants-appellants.

David Calhoun Stephens, Asst. U.S. Atty., argued (E. Bart Daniel, U.S. Atty., Greenville, S.C., on brief), for plaintiff-appellee.

Before HALL and WILKINSON, Circuit Judges, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.

K.K. HALL, Circuit Judge:

Thomas Lynn Porter ("Lynn") and his son Danny Nick Porter ("Nick") appeal from the judgments entered on their conditional pleas of guilt under Fed.R.Crim.P. 11(a)(2) to one count of conspiring to conduct an illegal gambling business, in violation of 18 U.S.C. § 371; one count of operating an illegal gambling business, in violation of 18 U.S.C. § 1955; one count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); numerous counts of using interstate communications to promote illegal gambling on sporting events, in violation of 18 U.S.C. § 1084; and numerous counts of aiding and abetting, in violation of 18 U.S.C. § 2. Lynn Porter also appeals his sentence imposed under the United States Sentencing Guidelines. Finding no error in the district court's acceptance of the Porters' guilty pleas or in the calculation of Lynn Porter's sentence, we affirm.

I.

During 1987 and 1988, Lynn Porter's extensive gambling operation, headquartered in Greenville, South Carolina, came under investigation. Nick Porter was also heavily involved in the business. In early 1988, upon hearing of the investigation, Lynn Porter fled the country to Pusan, South Korea. He returned briefly to South Carolina to engage an attorney to enter into plea negotiations with the government. When plea negotiations turned sour, he again left for Pusan. He eventually ended up in the Philippines, where he was joined by Nick.

In late April 1988, Lynn sold a residence in South Carolina for approximately $225,000. The home was purchased in early 1986 with money generated by illegal gambling activities. Lynn took $221,594.76 of the proceeds of the sale to South Korea.

In July 1988 an arrest warrant was issued for Lynn based on his illegal gambling activities. This triggered an international search to locate his whereabouts. In August, a grand jury returned a 13–count indictment charging the Porters with numerous gambling-related crimes and one count of money laundering, arising from the sale of the home.

The Porters were eventually located in the Philippines. On October 27, 1988, the State Department revoked their passports, and, on November 1, 1988, the Department, through the American Embassy, notified Filipino authorities of the Porters' fugitive status. On January 25, 1989, the Porters were taken into custody by Filipino authorities as undocumented aliens.

On February 2, 1989, the Philippine Commission on Immigration and Deportation ordered that the Porters be summarily deported because of their passport revocations. The Porters promptly requested a stay of deportation pending the outcome of a hearing before United States authorities over the revocation of their passports. *See* 22 C.F.R. § 51.81. The American Embassy informed the Commission that such a hearing is purely administrative in nature and could be held in the United States. The

Commission subsequently denied the request for a stay. On February 9, 1989, the Porters were escorted to the United States by Filipino authorities.

At the time the Porters boarded the plane to the United States, Lynn complained of being "giddy headed" and asked to see a doctor.[1] He also asked to see his attorney. Both requests were denied.[2]

On May 1, 1989, appellants entered conditional guilty pleas to all counts of the indictment, reserving the right to challenge the legality of their involuntary return to the United States. They raised this challenge in a motion to dismiss their indictment. On the recommendation of a magistrate, this motion was denied by the district court and judgment was entered on the pleas.

At Lynn's sentencing, pursuant to U.S. S.G. § 3D1.2 the district court grouped all of the gambling counts together as closely-related offenses. The adjusted offense level for this group was 16. The court did not include in this group, however, the money laundering offense, which has a base offense level of 20. U.S.S.G. § 2S1.1(a)(2). This base level was adjusted upward by two levels because of the amount of money laundered. U.S.S.G. § 2S1.1(b)(2)(C). Because the adjusted offense level for this offense (22) was greater than that of the grouped gambling offenses (16), it was used to calculate Lynn's total offense level. U.S.S.G. § 3D1.4. It was then enhanced by one level to reflect the effect of the less serious gambling offenses on Lynn's combined offense level. U.S.S.G. § 3D1.4(b). After a two-level downward adjustment for acceptance of responsibility, Lynn's total offense level was 21, which, with his criminal history category of III, yields a guideline sentence range of 46–57 months. The district court imposed the maximum 57–month sentence.

This appeal followed.

## II.

Both appellants argue that the circumstances surrounding their involuntary removal from the Philippines denied them due process and required dismissal of their indictments. They contend that by summarily revoking their passports without the benefit of a post-revocation hearing as per 22 C.F.R. § 51.81, and by facilitating their deportation by Filipino authorities, the government deprived them of their "liberty" interest to travel abroad without due process of law. They also argue that these actions violated their rights under Filipino law to a hearing before deportation. They further contend that these actions, coupled with the denial of Lynn's pre-flight requests to see a doctor and an attorney, constitute outrageous government conduct that requires dismissal of their indictments. We are not persuaded.

In *United States v. Wilson*, 721 F.2d 967, 972 (4th Cir.1983), we confirmed our adherence to the *Ker–Frisbie* doctrine, *i.e.*, "the general rule that a court's power to try a criminal defendant is not impaired by the government's use of even forcible abduction to bring the defendant within the court's jurisdiction." *Id.*, *citing Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 511–12, 96 L.Ed. 541 (1952); *Ker v. Illinois*, 119 U.S. 436, 444, 7 S.Ct. 225, 229–30, 30 L.Ed. 421 (1886). Appellants here, as did the appellant in *Wilson*, urge us to recognize a due process exception to this rule. In *United States v. Toscanino*, 500 F.2d 267, 275 (2d Cir.1974), the Second Circuit held that where, in bringing an accused to justice, the government commits "deliberate, unnecessary and unreasonable" violations of that person's constitutional rights, which are "outrageous" and "shocking to the conscience," due process will not allow a court to exercise jurisdiction over that person. Appellants argue that if we accept this reasoning, it compels

---

**1.** During his incarceration in the Philippines, Lynn was hospitalized for a heart ailment and related problems. He has no complaints about this medical treatment.

**2.** Lynn admits that while in the custody of Filipino authorities, he had unrestricted access to counsel. He also concedes that 15 minutes prior to boarding the plane he was allowed to call his attorney.

dismissal of their indictments. We disagree.

Just as we did in *Wilson*, we conclude that even assuming the validity of *Toscanino* in this Circuit, an issue we do not decide, we would not find that it requires dismissal of these indictments. In *Toscanino*, the defendant was forcibly kidnapped, tortured for over two weeks, and drugged before being brought onto U.S. soil. *Id.* at 269–70. The government's conduct in the instant case certainly did not rise to this level. Here, it is uncontested that except for Lynn Porter's last minute requests, he was given adequate medical treatment and unfettered access to counsel. And, even if the government's actions in revoking appellants' passports and securing their deportation were in some way unconstitutional, they are still not the type of deliberate outrageous government conduct that justifies dismissal of these indictments. Accordingly, we affirm the lower court's denial of appellants' motion to dismiss.

### III.

Lynn Porter challenges his sentence on several grounds. First, he contends that the district court erred in not grouping his money laundering conviction with his gambling convictions under U.S.S.G. § 3D1.2 as closely-related counts. He argues that the money laundering count is inextricably tied to the gambling counts because the money laundered was illegal gambling proceeds. Second, he contends that the enhancement of his offense level under U.S.S.G. § 2S1.1(b)(2)(C), based on the specific offense characteristic of the amount of money laundered, violates the *ex post facto* clause. This is so, he argues, because the provision substantially disadvantages him by increasing his punishment based on conduct, the initial accumulation of the money to purchase the home, which occurred entirely before the November 1, 1987, effective date of the guidelines. Third, he argues that the district court abused its discretion in sentencing him at the top of his guideline range. We address these issues in turn.[3]

Our analysis of appellant's contention that his money laundering conviction is closely related to his gambling convictions is guided by U.S.S.G. § 3D1.2.[4] As we made clear in *United States v. Toler*, 901 F.2d 399, 402 (4th Cir.1990), our review of the district court's legal interpretation and application of this provision is *de novo*. *Compare United States v. Pope*, 871 F.2d 506, 509 (5th Cir.1989) (district court's case-specific and factual conclusions as to application given due deference). Further, our analysis must be informed by the competing purposes of the provision, "to ensure 'incremental punishment for significant additional criminal conduct'" and "to prevent 'multiple punishment for substantially identical offense conduct.'" *Toler*, 901 F.2d at 402.

Turning to § 3D1.2, counts are to be grouped as closely related in four instances:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan, ....

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

3. In his brief, Porter also challenged the concurrent 57–month sentences he received on his convictions under 18 U.S.C. § 371 (conspiracy) and 18 U.S.C. § 1955 (operation of an illegal gambling business) as being in excess of the applicable guideline ranges for those crimes. At oral argument, he conceded that this argument was meritless in view of U.S.S.G. § 5G1.2(b), which mandates that, in multiple-count sentences, to the extent possible without exceeding statutory maximums or minimums, the sentence on each count shall be equal to the total punishment.

4. Grouping of these counts together would lower appellant's total offense level by one, through elimination of the combined offense level enhancement of § 3D1.4. This change would correspond to a sentencing range of between 41–51 months, a potential of at least a six-month sentence reduction.

(d) Counts are grouped together if the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

In the case at hand, subsection (c) is plainly inapplicable because neither gambling nor money laundering is a specific offense characteristic (or other adjustment) of the other. However, acts of money laundering which were closely integrated with an illegal gambling operation, might, in the right circumstances, qualify as closely-related counts under either subsections (a), (b), or (d). Each of these provisions allows for grouping where the offenses in question constitute part of the same trans-- action or part of the same continuing, common criminal endeavor. One could envision an illegal enterprise which generated monies through illegal gambling activities and simultaneously laundered those monies as part of the same continuing transaction or common scheme. Such is certainly not the case here, however. But for the fact that the home Porter sold was originally purchased with gambling proceeds, this money-laundering offense was completely unrelated to the gambling operation. There is no evidence whatsoever that this sale was in any way integrated with the gambling operation or connected to any particular gambling transactions. The single connection offered by appellant is thus insufficient to support a finding that the laundering of the funds used to purchase the house was "closely related" to the gambling operation which generated them. To hold otherwise would mean that every act of money laundering would be closely related to the underlying crime which produced the laundered money. This result is contrary to common sense and to § 3D1.2's mission to incrementally punish significant additional criminal conduct. Accordingly, we affirm the lower court's decision not to group these offenses as closely related.

## IV.

Appellant's *ex post facto* challenge to the 2–level enhancement he received based on the fact that the money laundered was accumulated prior to the Guidelines' effective date merits little discussion. As the Supreme Court recently made clear in *Collins v. Youngblood,* —— U.S. ——, ——, 110 S.Ct. 2715, 2723–25, 111 L.Ed.2d 30, (1990), the *ex post facto* clause is not implicated every time a retrospective change in the law works to a defendant's disadvantage. In rejecting such an expansive interpretation, the Court held that the clause's prohibitions are triggered only by a statute which

"punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed."

*Id.* —— U.S. at ——, 110 S.Ct. at 2719, *quoting Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925). As applied to appellant, § 2S1.1(b)(2)(C) offends none of these principles.

It is obvious that this specific offense characteristic does not criminalize a previously committed innocent act or deprive appellant of any defense to the crime of money laundering. And, while § 2S1.1(b)(2)(C) may arguably increase the likely punishment for this crime, it certainly does not do so retroactively. Appellant pleaded guilty to conducting a financial transaction, which involved the proceeds of unlawful activity, with the intent to "conceal or disguise the nature, the location, the source, or the control" of the unlawfully acquired proceeds. 18 U.S.C. § 1956(a)(1)(B)(i). This transaction was the sale of the home, which occurred in late April 1988, well after the November 1, 1987, effective date of the guidelines. Thus, even though the illegal proceeds were accumulated prior to the guidelines' effective date, the crime for which appellant is being punished, and every element of that crime, occurred entirely after that

date. There simply has been no after the fact increase in appellant's punishment. Consequently, application of the specific offense characteristic of § 2S1.1(b)(2)(C) to appellant does not offend the *ex post facto* clause.

## V.

■ Appellant's last request is that we review the district court's decision to sentence him at the top of his guideline range for an abuse of discretion. This we cannot do.

We derive our limited authority to review appellant's sentence from 18 U.S.C. § 3742:

(a) **Appeal by a defendant.**—A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under subsection 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

*See also United States v. Bayerle*, 898 F.2d 28, 30 (4th Cir.), *pet. for cert. filed*, No. 89–1937 (June 7, 1990).

As our foregoing discussion has made clear, the district court correctly interpreted and applied the guidelines in ascertaining appellant's total offense level of 21, criminal history category of III, and sentence range of 46–57 months. Appellant's

sentence is well within the statutory maximum penalty for his crimes and he does not contend that it is in violation of any law.[5] *See United States v. Tucker*, 892 F.2d 8, 10 (1st Cir.1989) (claim of "abuse of discretion" is not cognizable as a sentence in "violation of law" under 18 U.S.C. § 3742(a)(1)). Thus, appellant's challenge is to the district court's exercise of discretion in setting a sentence within a properly calculated guideline range. This challenge does not state an appealable question under 18 U.S.C. § 3742.

■ Section 3742 reflects Congress' measured judgment to allow only limited appellate review of sentences imposed under the guidelines. S.Rep. No. 225, 98th Cong., 2nd Sess. 149 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3332–33; *Tucker*, 892 F.2d 8, 10–11 (1st Cir.1989); *United States v. Franz*, 886 F.2d 973, 978–79 (7th Cir.1989); *United States v. Colon*, 884 F.2d 1550, 1553–55 (2d Cir.), *cert. denied sub nom. Papathanasion v. United States*, —— U.S. ——, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989). As we decided in *Bayerle*, this limited scheme of review does not include review of a sentencing court's discretionary decision not to depart downward from a properly calculated sentencing range. *See Bayerle*, 898 F.2d at 30 (and cases cited therein). We reached this conclusion after determining that such review is not permitted under the plain language of § 3742(a). For the same reason, we now hold that 18 U.S.C. § 3742(a) also does not provide for appellate review of a sentencing court's discretion in setting a sentence anywhere within a properly calculated sentencing range. As the Second Circuit noted:

Sentences within the Guidelines may be deemed to be reasonable and within the exclusive discretion of the sentencing court solely because of the [Sentencing] Commission's blessing of the permissible range. A provision for appellate review

---

**5.** The basis of appellant's challenge is an alleged disparity between the sentence he received and those received by his coconspirators. Even if this were a pre-guidelines case, this challenge would be completely meritless. *United States v. Foutz*, 865 F.2d 617, 621 (4th Cir.1989) ("A sen-

tencing court simply 'is not obligated to consider the sentences of codefendants.' ") (*citing United States v. Lauga*, 762 F.2d 1288, 1291 (5th Cir.), *cert. denied*, 474 U.S. 860, 106 S.Ct. 173, 88 L.Ed.2d 143 (1985)).

of such sentences might be thought to be desirable, but it is surely not essential. *Colon,* 884 F.2d at 1555. Because Congress did not see fit to include such a provision in § 3742, we cannot address appellant's challenge to the district court's exercise of sentencing discretion.

## VI.

In sum, the district court properly accepted appellants' conditional pleas of guilt and correctly calculated appellant Lynn Porter's sentence under the guidelines. Accordingly, we affirm.

AFFIRMED