UNITED STATES of America,
Plaintiff–Appellee,

v.

Leemunth Peter JOHN,
Defendant–Appellant.

No. 90–5052.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 11, 1991.

Decided June 4, 1991.

William Dupree Spence, Kinston, N.C., for defendant-appellant.

John Stuart Bruce, First Asst. U.S. Atty., argued (Margaret Person Currin, U.S. Atty., on brief), Raleigh, N.C., for plaintiff-appellee.

Before RUSSELL, HALL, and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

This case involves the question of whether and by what means a defendant's sentence may be enhanced under the United States Sentencing Guidelines due to that defendant's conduct during the course of an arrest. Because we are unable to assess on this record whether such an adjustment would be warranted in appellant's case, we remand for further findings.

I.

Leemunth Peter John pled guilty to one count of possession with intent to distribute cocaine base (21 U.S.C. § 841(a)(1)) and one count of use of a firearm in a drug trafficking crime (18 U.S.C. § 924(c)(1)).

At the sentencing hearing on May 3, 1990, Detective David Best and appellant John testified as to the events of August

17, 1989, the evening John was arrested. Best testified that he saw a gold colored Chrysler with no rear lights weaving from side to side as it proceeded down Dixon Avenue in Greenville, North Carolina. Unable to find back-up, Best stopped the Chrysler, approached the driver—John— and asked him for his driver's license. When John responded that he did not have a driver's license, Best told him to keep his hands on the dash where they could be seen. Best testified that, at that time, John's left hand was on the steering wheel and his right hand was down beside his right leg.

According to his testimony, Best then pointed his flashlight into the car. At that point, he saw appellant's right shoulder move. Shining the flashlight on appellant's right leg, Best saw about two inches of the barrel of a gun resting between appellant's index and middle fingers. Best testified that he believed that John was going to use the gun.

In response, Best went for his gun. Unable to get it out of his ankle holster, Best dropped his flashlight and lunged through the open car window. Best managed to get the car door open and, trying to fight John off, grabbed John's right hand. Best's partner, who had been sitting in the squad car guarding two suspects, saw what was happening and came to help.

According to Best's testimony, the two officers pulled the resisting John out and "fought him all the way down the side of the car." A third officer pulled up in a second squad car and came to assist. Together, the three officers wrestled John and succeeded in handcuffing him.

One of the officers searched John and the passenger area of the car. The presentence report detailed the items found which included approximately 5.9 grams of crack cocaine, an undetermined amount of marijuana and a fully loaded Excam caliber .380 pistol.

Appellant John's testimony as to the events of the evening of August 17, 1989 differed from Best's in several respects. According to John, after Best approached his car, he started to turn the car off. Best asked him what he was doing. When John explained, Best told him to leave the car alone and John agreed. John testified that Best then asked him to step out of the car and that he complied. Best searched John and then asked John to let him cuff him.

John testified that he put his arms behind his back but that Best tried to cuff them in a painful position. John asked Best to cuff them differently; Best argued that he could cuff them the way he wanted. John testified that, at that point, several other officers approached and all of them started wrestling him. The officers searched him again and then started roughing him up. John testified that he did not resist arrest.

At the conclusion of the evidentiary hearing, the district court granted the government's request for a two level increase for obstruction of justice, noting that "there was a struggle beyond the norm in this case." The court then determined that the Guideline range for the possession count was sixty-three to seventy-eight months and that the firearm count carried a mandatory term of sixty months.

Judgment was entered and John was sentenced to seventy-eight months imprisonment for the possession count and sixty months for the firearm count, the terms to run consecutively for a total of 138 months. The district court added a special directive that, after serving his sentence, the defendant be released to the custody of United States immigration authorities with the request of the court that John be deported immediately. In addition, the court directed that John be on supervised release as long as he remained in this country.

This appeal followed.

## II.

█ John contends that his conduct cannot serve as the basis for an enhancement under the relevant obstruction of justice provision. The provision of the Sentencing Guidelines applicable to John's case reads as follows:

§ 3C1.1 *Willfully Obstructing or Impeding Proceedings*

If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase offense level by 2 levels.

United States Sentencing Commission, *Guidelines Manual*, § 3C1.1 (Nov. 1989).

In statutory interpretation, "the starting point is the language of the statute." *Dole v. United Steelworkers of America*, 494 U.S. 26, 110 S.Ct. 929, 934, 108 L.Ed.2d 23 (1990) (quoting *Schreiber v. Burlington Northern, Inc.*, 472 U.S. 1, 5, 105 S.Ct. 2458, 2461, 86 L.Ed.2d 1 (1985)). The plain language of § 3C1.1 encompasses administration of justice in the broadest sense— from the beginning of the criminal justice process through all aspects of prosecution.[1] Willful interference with police activity can operate as an obstruction of justice in certain circumstances. Police officers are intimately involved in the "investigation" and "prosecution" of the offense, including the arrest of suspects. If the police were threatened during a criminal investigation, § 3C1.1 would clearly apply. Similarly, a defendant's conduct that endangers an officer during arrest is conduct that "impeded or obstructed ... the administration of justice during the investigation or prosecution of the instant offense."[2] To hold that a defendant's conduct during the course of an arrest could never constitute obstruction of justice would be to carve such conduct out of a provision whose inclusive language does not invite exception.

The cases interpreting the obstruction of justice provision support the view that extraordinary interference with or endangerment of law enforcement officials or bystanders can constitute obstruction of justice. *See United States v. Paige*, 923 F.2d 112, 114 (8th Cir.1991) (enhancement affirmed where suspect "endangered others' lives and destroyed incriminating evidence" during high-speed flight from arrest); *United States v. Castillo–Valencia*, 917 F.2d 494, 502 (11th Cir.1990) (enhancement affirmed where defendant assisted in attempt to evade and to ram Coast Guard vessel with vessel carrying drugs); *United States v. White*, 903 F.2d 457, 462 (7th Cir.1990) (enhancement affirmed where defendant endangered law enforcement personnel and bystanders in course of high-speed flight from arrest); *United States v. Tellez*, 882 F.2d 141, 143 (5th Cir.1989) (enhancement affirmed where defendant attempted flight, endangering arresting officer and bystanders, and made vigorous efforts to resist arrest after his vehicle crashed); *United States v. Franco–Torres*, 869 F.2d 797, 800 (5th Cir.1989) (enhancement affirmed where defendant threw gun away to hide it and shot at agent who was both witness to crime and investigating officer). The dissenting opinion, by contrast, has pointed to no court that holds its view that the provision is inapplicable to flight or resistance to arrest "regardless of the danger posed."

■ While the examples of conduct listed in the application notes to § 3C1.1 as a basis for applying the adjustment do not specifically include resistance to arrest, the non-inclusion of such conduct in the enumerated list is not dispositive. *White*, 903 F.2d at 461. The failure of the Sentencing Commission to include a particular type of conduct was not thought significant by the Seventh Circuit both because the application notes themselves provide that the list of examples is not meant to be exclusive and because "the drafters of the commentary to the Sentencing Guidelines recognized the obvious inability of any group drafting guidelines to encompass and list

---

**1.** Since the time of John's sentencing, § 3C1.1 has been made broader still. Effective November 1, 1990, the provision reads:

§ 3C1.1 *Obstructing or Impeding the Administration of Justice*

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

**2.** In order for an adjustment under § 3C1.1 to be warranted, the defendant must also have acted "willfully." Most courts—at least implicitly—have found endangerment can be willful. We have no difficulty concluding that intending to use a gun on an officer is willful within the meaning of § 3C1.1.

each and every example of obstruction of justice." *Id.* Even in *United States v. Stroud,* 893 F.2d 504, 506 (2d Cir.1990), the case relied on most heavily by John, the court declined the defendant's invitation to narrowly confine the obstruction provision in § 3C1.1 to attempts to corrupt the truth-finding process.[3]

In sum, the obstruction of justice provision applicable in John's case represented a broad residual and omnibus provision whose sweeping language permitted application to a variety of different circumstances. As the provision in effect at the time of John's arrest, it was the logical provision for the district court to apply. As the Guidelines have undergone further refinements, however, certain forms of police-citizen contact have been removed from this general provision and made the basis for specific adjustments.

To take an initial example, § 3A1.2(b) (effective date November 1, 1989) provides for a three level increase if "during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury." It is, of course, an elementary canon of statutory construction that the specific provision controls the general. *Markair, Inc. v. Civil Aeronautics Bd.,* 744 F.2d 1383, 1385 (9th Cir.1984). Had this specific provision been in effect at the time of John's arrest, the district judge would have been well advised to address its application to John's conduct. However, as this revision only took effect between the time of John's arrest and his sentencing, application of the two level enhancement under the older residual provision rather than the three level enhancement under the amended provision avoided any potential problem of an ex post facto application. *See United States v. Morrow,* 925 F.2d 779, 782–83 (4th Cir. 1991).

To take a second example of removal of specific conduct from the omnibus provision, § 3C1.2 (effective date November 1, 1990) provides for a two level enhancement for reckless endangerment during flight.[4] Those courts which had applied the earlier omnibus provision to endangerment during flight would now presumably apply the more specific § 3C1.2. The latest application notes to § 3C1.1 now reference § 3C1.2 as a particular species of obstructive conduct to which the two level adjustment will apply, and the Commission has noted that "reckless endangerment during flight is sufficiently different from other forms of obstructive conduct to warrant a separate enhancement." U.S.S.G.App. C, note to amendment 347 (Nov. 1990). The Guidelines reveal, however, that the parent of § 3C1.2 was the earlier omnibus obstruction provision in § 3C1.1.

As the Sentencing Commission is embarked upon an enterprise whose continuous and evolving nature is apparent, detailing the development of specific concepts may be helpful. The above examples, however, would be of no avail in supporting an enhancement if the plain language of the applicable provision and a substantial body of caselaw interpreting it did not, at the time of John's arrest, clearly support the adjustment. Here, the indicators all point to the fact that the district court properly applied the plain language of § 3C1.1—at

---

**3.** At the time of John's sentencing, the introductory note to the commentary to § 3C1.1 stated that "[t]his section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense." This introductory paragraph was deleted as part of the November 1990 amendments.

We note that this explanatory statement cannot trump the plain language of the provision which it is intended to illuminate. In any case, the phrase "conduct calculated ... to willfully interfere with the disposition of criminal charges" can be interpreted to encompass all aspects of investigation and prosecution.

**4.** § 3C1.2 *Reckless Endangerment During Flight*

If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels.

the time the only language relevant to John's conduct—to address the appropriateness of a two level increase for forcible resistance to arrest.

## III.

■ There remains the question of whether the findings of the district court are adequate to support a two level increase in this case.

An ordinary course of conduct during arrest would plainly not justify an enhancement under the obstruction of justice provision. Arrests by their very nature are often not amiable encounters and an unpleasant exchange of words, for example, between a suspect and an arresting officer provides no basis for an adjustment. Such conduct can appropriately be sanctioned, not by way of enhancement, but by the determination of the particular sentence within the otherwise applicable Guideline range. *See, e.g.,* U.S.S.G. § 3C1.1, comment. (n. 4) (Nov. 1990). Extraordinary conduct, however, which endangers arresting officers or others, would support an adjustment because the very purpose of such adjustments is to take into account culpable conduct outside the norm. *See* U.S.S.G. § 3C1.1, comment. (n. 3(d)) (Nov. 1990).

■ For example, mere flight from an arresting officer would not, by itself, warrant an enhancement. *See United States v. Hagan,* 913 F.2d 1278, 1285 (7th Cir. 1990) (enhancement not warranted where officers were never endangered by unarmed suspect who attempted flight on foot); *United States v. Garcia,* 909 F.2d 389, 392 (9th Cir.1990) (obstruction of justice does not include "the instinctive flight of a suspect who suddenly finds himself in the power of the police."); *Stroud,* 893 F.2d at 506 ("mere flight from arrest, by itself, does not constitute obstruction"). The addition of § 3C1.2 providing for an enhancement for reckless endangerment during flight made the absence of an en-

hancement for ordinary flight explicit. The cases suggest that endangering others during flight or in the course of resisting arrest involves active, willful behavior; in contrast, mere flight or disagreeableness during an encounter involves more passive or instinctive conduct.

■ We now turn to the particular finding at issue. The entirety of the finding underlying the district court's enhancement was that "there was a struggle beyond the norm in this case." While it appears that the district court credited the testimony of Detective Best, its finding is insufficiently informative. We do not know, for example, why the struggle ensued or whether the district court credited the testimony of Best that John intended to use the gun that lay in his right hand. If the arrestee's conduct endangered the personal safety of the police officer, an enhancement under § 3C1.1 was plainly warranted. The present finding, however, requires that we make what would be at best an educated guess as to endangerment. We, therefore, remand for the district court to make a factual finding to which we may accord due deference. *See* 18 U.S.C. § 3742(e).[5]

## IV.

For the foregoing reasons, the judgment of the district court is

REMANDED WITH DIRECTIONS.

K.K. HALL, Circuit Judge, dissenting:

I do not believe that the obstruction of justice guideline encompasses actions such as flight or resisting arrest, regardless of the danger posed by such actions, and therefore I would remand for resentencing with instructions to exclude the two-level increase in John's offense level.

I agree with the majority that the proper starting point in our analysis is the language of the guideline itself. I am not willing, however, to ascribe to this language the breadth of meaning that the

---

**5.** Finally, John argues that the district court acted improperly in giving him a sentence at the top of the applicable guideline range. We have no jurisdiction, however, to review a sentence which is within the correct guideline range. *United States v. Porter,* 909 F.2d 789, 794 (4th Cir.1990).

majority so readily finds there. The majority correctly notes that the non-inclusion of resistance to arrest in the application notes to § 3C1.1 is not dispositive. What *is* included, however, is persuasive evidence that the drafters of § 3C1.1 contemplated conduct of a wholly different character. Of the six enumerated examples of included conduct, two involve the concealment of evidence and four the misleading of authorities via perjury, subornation, or intimidation of jurors—in sum, conduct intended to adversely affect the truth-seeking functions of the criminal justice system. U.S.S.G. § 3C1.1, comment. (n. 1) (Nov. 1989). Resisting arrest, regardless of the intensity of resistance or potential for injury, is qualitatively dissimilar.

Commentary to the version of § 3C1.1 under which John was sentenced states that the section was intended to cover "conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to wilfully interfere with the disposition of criminal charges." U.S.S.G. § 3C1.1, comment. (Nov. 1989). This explanation reinforces my belief that § 3C1.1 is limited to conduct that obstructs only the truth-seeking functions of the criminal justice system, and the majority implicitly concedes as much when it notes that "this explanatory statement cannot trump the plain language of the provision which it is intended to illuminate." Op. at 647, n. 3. But the language of the guideline itself does not "plainly" include the conduct to which it was applied in this case. The majority states elsewhere, albeit in the context of a different argument, that "[i]t is, of course, an elementary canon of statutory construction that the specific provision controls the general." Op. at 647. Again I concur in the canon of statutory construction selected by the majority, yet I come to the opposite conclusion when this canon is applied to the issue before us. The "specific provisions" are the enumerated examples in the Application Notes, and the "general" language is "willfully impeded or obstructed ... the administration of justice...." The general language is indeed trumped by the specific language of the examples given.

Further evidence of the drafters' intent can be found in the amendments. Effective November 1, 1990, § 3C1.1 explicitly excludes "avoiding or fleeing from arrest...." U.S.S.G.App. C, amend. 347. The amendment also added a new § 3C1.2 to cover situations in which a "defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer...." The creation of a new section, rather than merely amending the Application Notes to § 3C1.1 to add reckless endangerment to the list of enumerated examples of covered conduct, indicates to me that the drafters did not consider endangerment of others as fitting into the concept of "obstruction of the administration of justice."

Effective November 1, 1989, § 3A1.3 was amended to provide for a three-level increase for a defendant who, "... during the course of an offense or immediate flight therefrom, ... assaulted [a law enforcement] officer in a manner creating a substantial risk of serious bodily injury." U.S.S.G.App. C, amend. 247. This appears to clearly cover the conduct for which John received a two-level increase under § 3C1.1. Consistent with the majority's conclusion that § 3C1.1 included an assault component, it would follow that the further refinement of § 3A1.3 would trigger a concomitant refinement of § 3C1.1 to exclude such conduct. Yet the only 1989 amendment to § 3C1.1 corrected what amounted to a typographical error. U.S.S.G.App. C, amend. 251. I find this amendatory process to be indicative of the drafters' separation of "obstructive" conduct into two basic groups: § 3C1.1 and Chapter 2, Part J, dealing with the truth-seeking aspect of the criminal justice system, and § 3A1.2 and §§ 2A2.2–2A2.4, applicable to conduct involving physical endangerment.

In the Application Notes to the pertinent version of § 3C1.1 (Nov. 1989), the drafters were careful to cross-reference those provisions in Chapter 2 that pertained to "offenses involving the administration of justice," in order to insure that the § 3C1.1 adjustment would not be applied to a defen-

dant whose offense of conviction involved the same type of conduct covered by the adjustment provision. U.S.S.G. § 3C1.1 comment., (n. 4) (Nov. 1989). The absence of any reference to one of the assault-related provisions in Chapter 2A is a further indication that § 3C1.1 was simply not intended to cover resistance to arrest.

Finally, I am unable to accept the reasoning that the *degree* of danger presented by a resisting defendant is determinative of whether he had obstructed the administration of justice. The *Tellez, Valencia,* and *Franco–Torres* opinions cited by the majority contain neither analysis nor citation to authority regarding the issue of the applicability of § 3C1.1 to flight that endangers others. The *White* opinion contains the most extensive treatment of the issue, but at its core says little more than "common sense" supports the use of the § 3C1.1 adjustment when lives are endangered. My common sense tells me that defendants who endanger others while resisting arrest and fleeing from police deserve an enhancement of their sentence; try as I might, however, I am unable to accept an interpretation of § 3C1.1 that would accomplish this end.

I realize that I am swimming against the tide here. Nevertheless, I believe that the majority's view that "extraordinary interference with or endangerment of law enforcement officials or bystanders" can come within § 3C1.1's ambit stretches the concept of obstruction of proceedings to almost meaningless proportions. In a sense, everything done by a criminal to avoid detection or evade apprehension is a willful attempt to obstruct or impede "the administration of justice." The words of the guideline itself, the similar quality of the enumerated examples, the 1989 amendment of § 3A1.2 (to include assaultive con-

duct against a police officer) without a contemporaneous change in § 3C1.1, the cross-references in the Application Notes to the provisions in Chapter 2–Part J, and the 1990 amendment specifically excluding flight from § 3C1.1, all serve to persuade me that resisting arrest was simply not intended by the drafters as a form of obstruction of the administration of justice. Accordingly, I would vacate the sentence and remand for resentencing without the inclusion of the two-level increase in the offense level under § 3C1.1.[6]

**6.** It is still an open question in this circuit whether, on resentencing, the district court should apply the guideline in effect at the time of the original sentence or the amended guideline in effect on the date of resentencing. *United States v. Rogers,* 897 F.2d 134, 138 n. 9 (4th Cir.1990). Under the 1990 amendments, § 3C1.1 is clearly not applicable, and I believe it is at least arguable that § 3C1.2 does not reach resistance to arrest that does not blossom into

actual flight. The majority has limited the inquiry on remand to the factual issue of the degree of danger presented by John's resistance; the legal inquiry into what version of Chapter 3 should apply has been foreclosed. Op. at 647–48. I believe the latter issue is still an open one, and if John would fare better under the 1990 amendments, it is also an open question whether he should get the benefit of the more lenient provisions.