**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                          No. 95-5808

WALTER E. WILLIAMS,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CR-95-58)

Submitted: January 28, 1997

Decided: February 13, 1997

Before HAMILTON, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Hunt L. Charach, Federal Public Defender, Charleston, West Vir-
ginia, for Appellant. Rebecca A. Betts, United States Attorney, Steph-
anie D. Thacker, Assistant United States Attorney, Charleston, West
Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Walter E. Williams was convicted by a jury of possessing a firearm while a convicted felon in violation of 18 U.S.C. § 922(g)(1) (1994). He appeals his conviction and his 115-month sentence, alleging that the district court erred in rejecting his proposed jury instruction, in admitting certain evidence, in refusing to dismiss a juror who recognized a government witness, and in enhancing his sentence for reckless endangerment. United States Sentencing Commission, Guidelines Manual, § 3C1.2 (Nov. 1994). We affirm.

In January 1995, while Walter E. Williams was on supervised release after serving a term of imprisonment for a drug offense, Deputy United States Marshal William Snodgrass found him in possession of a .38 caliber bullet and a black nylon holster. In February 1995, after the court received information that Williams had violated the conditions of his supervised release, a warrant issued for Williams' arrest. His probation officer ordered Williams to surrender but he failed to do so.

On February 23, 1995, Probation Officer Tom Lewis saw Williams drive his black Mercury into a hotel parking lot. Lewis contacted the United States Marshal's Service. Shortly afterward, Deputy Marshal William Snodgrass arrived at the parking lot. Williams was gone from the car; however, looking through the window, Snodgrass observed a gun partially concealed under the floor mat on the driver's side. The gun proved to be a .38 special, a derringer. It had two bullets in it and was in the same black nylon holster which Snodgrass found attached to Williams' belt in January.

Williams was taken into custody the next day. Early in the afternoon, he eluded capture after a footrace in a residential area. Just before dark, while Williams was riding with a confidential informant, deputy marshals and Kanawha County deputy sheriffs surrounded his car on a main highway. Williams got out of the car, jumped the median barrier, ran across the oncoming traffic lanes, and went down a brushy hillside toward the Kanawha River. The deputies chased him with guns drawn because they believed he was armed. One deputy

2

accidentally discharged his weapon during the chase. When Williams was confronted on the river bank, he refused to surrender, went into the water and refused to come out. Two deputies were forced to subdue Williams in the water to take custody of him.

When the bullet seized on January 9 from Williams was examined by C.R. Lane, the Firearms and Toolmarks Examiner for the West Virginia State Police Forensic Laboratory, Lane found that it had fire pin markings which indicated that it had been fired from the derringer seized on February 24. Lane's report was provided to Williams prior to trial. The government filed a motion in limine to determine whether the evidence was admissible. The district court excluded evidence linking the bullet seized on January 9 to the gun seized on February 24 from the government's case-in-chief because the defense had not been given notice that expert testimony would be used. The court later permitted the government to introduce this evidence in rebuttal.

At trial, Crystal Jones testified for the government that Williams tried to sell her a .38 caliber derringer with a black holster on February 22, 1995, the day before the gun was found in his car. Williams' girlfriend, Jane Fletcher, testified that the gun belonged to her, that she had left it in the car the night before Williams' arrest, and that he did not know it was in the car. In rebuttal, the government first had Deputy Marshal Snodgrass testify about the bullet Williams possessed in January 1995. Next, C.R. Lane testified that the bullet found in Williams' pants pocket in January had been fired from the same derringer seized from his car in February and reloaded for additional use.

On appeal, Williams first contends that the district court erred in refusing to instruct the jury that, following the Supreme Court's decision in <u>Lopez v. United States</u>, ___ U.S. ___, 63 U.S.L.W. 4343 (U.S. Apr. 26, 1995) (No. 93-1260), the government was required to prove that the defendant's possession of the firearm had an explicit connection with or effect on interstate commerce. Williams argues that <u>Lopez</u> heightened the burden of proof for all federal firearms offenses, a position which is based on inferences drawn from the language of the opinion rather than its explicit holding. The argument he makes was rejected in <u>United States v. Smith</u>, 101 F.3d 202, 215 (1st Cir. 1996) (proof of minimal nexus to interstate commerce still sufficient for § 922(g) conviction after <u>Lopez</u>); <u>see also United States v. Lewis</u>,

3

100 F.3d 49, 50-53 (7th Cir. 1996) (same). Consequently, we find that the district court did not err in refusing Williams' requested jury instruction.

Next, Williams contends that C.R. Lane's testimony was improperly admitted because it concerned another bad act (Williams' possession of the bullet seized in January) and no notice of his testimony was provided until the eve of trial. Fed. R. Evid. 404(b) provides that evidence of other crimes, wrongs, or bad acts may be admissible at trial if the government gives reasonable notice before trial. Other criminal acts are intrinsic to the charged crime (and therefore are not excludable under Rule 404(b)) if they are inextricably intertwined with it or are necessarily preliminary to it or if both are part of a single criminal episode. United States v. Chin, 83 F.3d 83, 87-88 (4th Cir. 1996). Possession of a firearm and possession of ammunition for the firearm are acts which are inextricably intertwined even though each may be charged as a separate crime. The district court's exclusion of Lane's testimony from the government's case-in-chief was based on the government's failure to identify Lane as an expert witness in pretrial disclosure as required by Fed. R. Crim. P. 16(a)(1)(E), not because his testimony concerned a prior bad act. Lane's testimony was not excludable under Rule 404(b).

Williams also argues that Lane's expert testimony was inadmissible because the government failed to list him as an expert witness or provide a summary of his expected testimony during discovery. However, Rule 16(a)(1)(E) requires the government to disclose a summary of expert witness testimony which it intends to use during its case-in-chief. Lane's testimony became necessary only after Fletcher's testimony that the gun found in Williams' car in February belonged to her. Because Rule 16 did not prevent Lane's testimony in rebuttal, no error occurred.

In the middle of the trial, juror Harold Boggess notified the court that he saw government witness C.R. Lane in the hall and recognized him as an assistant scoutmaster known to him as "Rocky" Lane. The district court questioned juror Boggess about his acquaintance with Lane and permitted both attorneys to do so. Boggess said he and Lane had gone on camping trips with the scouts two or three times a year for the last three years. Boggess said he respected Lane's opinion but

would be able to reach a fair and impartial verdict nonetheless and would not give undue weight to Lane's testimony. Although an alternate was available and defense counsel asked that Boggess be dismissed, the district court decided to keep him on the panel.

A determination of impermissible bias is "essentially one of credibility, and therefore largely one of demeanor," and thus a trial court's evaluation of a juror is entitled to "special deference." Patton v. Yount, 467 U.S. 1025, 1038 (1984). Williams argues that, because Lane's testimony was improperly admitted, the damage was "cumulative." However, Lane's testimony was properly admitted. Consequently, we find that the district court did not abuse its discretion in refusing to dismiss Boggess.

Finally, Williams challenges the finding that a sentence enhancement for reckless endangerment was appropriate because of his attempt to elude capture on the highway and the riverbank. The guideline provides for a two-level adjustment if the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. "Reckless" is used as it is defined in USSG§ 2A1.4 to mean that "the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." The district court's factual finding is reviewed for clear error. See United States v. John, 935 F.2d 644, 648 (4th Cir. 1991).

The court found that Williams earned the adjustment by running across four lanes of traffic, causing the marshals to follow him, causing them to run after him over uneven terrain with weapons drawn, and finally forcing them to remove him from the river. Williams argues that he did no more than flee. However, the circumstances of his flight created obvious risks to all concerned from the traffic and the danger of firearms being discharged. The district court did not clearly err in finding that Williams had created a serious risk of death or serious bodily injury to another in the course of his flight.

The conviction and sentence are therefore affirmed. We dispense with oral argument because the facts and legal contentions are ade-

5

quately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6