PICKERING, Circuit Judge:
Defendant-Appellant Jose Chavarria appeals the district court’s enhancement of his sentence for obstruction of justice. We affirm.
Jose Chavarria was charged in a two-count superseding indictment with possession of an unregistered sawed-off shotgun, 26 U.S.C. §§ 5861(d) and 5871, and being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2). A jury convicted him on both counts.
On appeal, Chavarria contends that (1) the district court erred when it imposed an obstruction of justice enhancement for threats made to an arresting officer; (2) § 922(g)(1) is unconstitutional under the Second Amendment; and (3) § 922(g)(1) is unconstitutional because it does not require a substantial effect on interstate commerce; or in the alternative, the evidence was insufficient to show a substantial effect on interstate commerce. BACKGROUND
Chavarria was involved in a confrontation at a residence in Alice, Texas on May *477 4, 2002. During this incident, he brandished a sawed-off shotgun, pointing it at numerous people including young children and a nine-month-old infant. During the struggle to take the weapon away from Chavarria, Chavarria inflicted a onednch cut in the back of the head of one of those who took the weapon from Chavarria. After the weapon was taken from him, he left, but threatened to return and did return a short time later with his father and another small gun which he pointed at a number of people. Testimony at trial established that the shotgun was manufactured in Connecticut.
Shortly after the confrontation, police officers stopped a Dodge Neon driven by Chavarria’s father in which Chavarria was riding as a passenger. Chavarria was placed in handcuffs. As he was lying on the ground, in handcuffs, he complained of pain in his rib area. One of the arresting officers removed Chavarria’s handcuffs. Deputy Carlos Tanguma was called to the scene as back up. When Deputy Tanguma arrived, the other officers were seeking medical treatment for Chavarria; Deputy Tanguma again placed Chavarria in handcuffs and then placed him in the police car. Deputy Tanguma testified that Chavarria threatened that he would “pick me up and leave me with my intestines hanging out and he was going to burn my house down, and that I didn’t know who I was messing with.” Chavarria also called attention to the tattoos on his body and advised Deputy Tanguma that he was a member of a prison gang known as the Texas Syndicate.
Prior to trial, the district court conducted a hearing regarding threats allegedly made to some of the government’s witnesses. There was evidence that Chavar-ria’s girlfriend and father had threatened witnesses. The government did not present direct evidence of Chavarria’s involvement, in threatening witnesses, but as a result of this hearing, the court restricted Chavarria’s access to the phone, mail, and visitors.
Based on the foregoing threats, a two-level enhancement for obstruction of justice pursuant to U.S. Sentencing Guideline § 3C1.1 was recommended in the pre-sen-tence investigation report. See U.S. Sentencing Guidelines Manual § 3C1.1 (2001). Chavarria objected to the two-level enhancement and argued that the outburst directed at Deputy Tanguma resulted from intense pain, not any attempt to obstruct justice. The district court did not take the witness tampering into account in ruling on Chavarria’s objection,[1] stating at one point in the proceeding “actions of other people are not necessarily attributed to you.” Nevertheless, the district court overruled Chavarria’s objection and found that the threat against Deputy Tanguma was intended to obstruct justice and to hinder the investigation of the offense. The court then granted a two-level enhancement for obstruction of justice.
DISCUSSION

A. Obstruction of Justice Enhancement

We review the district court’s interpretation or application of the Sentenc *478 ing Guidelines de novo, but review the factual findings for clear error. United States v. Huerta, 182 F.3d 361, 364 (5th Cir.1999). The determination of whether § 3C1.1 covers a threat occurring while a defendant is being arrested and taken into custody involves an application or interpretation of the Guidelines and is thus an issue that this court reviews de novo. The question of whether the threats were made with the intent to obstruct or impede the administration of justice is a fact question which this court reviews for clear error. United States v. Greer, 158 F.3d 228, 233 (5th Cir.1998) (“We review ... factual findings, such as a finding of obstruction of justice, for clear error.... ”). “As long as a factual finding is plausible in light of the record as a whole, it is not clearly erroneous.” Huerta, 182 F.3d at 364.
Chavarria’s appeal presents an issue that has not previously been decided by the Fifth Circuit, making this a case of first impression. The issue is: Can a defendant’s sentence be enhanced under § 3C1.1 because the defendant threatens violence against a law enforcement officer at the time he is being arrested and taken into custody for the offense of conviction, if such threats were made with the specific intent to obstruct justice? This question can best be answered by analyzing the precise wording of that section of the Guidelines.
If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant’s offense of conviction ... increase the offense level by 2 levels.
U.S. SENTENCING GUIDELINES MANUAL § 3C1.1. Thus, the Guideline interpretation issue before the court boils down to whether arresting and taking a defendant into custody is part of the “administration of justice” in that particular case and whether the arrest occurs during the “investigation” or “prosecution” of the case.
The Fourth Circuit’s analysis in United States v. John, 935 F.2d 644 (4th Cir.1991), is instructive:
In statutory interpretation, “the starting point is the language of the statute.” The plain language of § 3C1.1 encompasses administration of justice in the broadest sense-from the beginning of the criminal justice process through all aspects of prosecution. Willful interference with police activity can operate as an obstruction of justice in certain circumstances. Police officers are intimately involved in the “investigation” and “prosecution” of the offense, including the arrest of suspects.... To hold that a defendant’s conduct during the course of an arrest could never constitute obstruction of justice would be to carve such conduct out of a provision whose inclusive language does not invite exception.
Id. at 646. (footnotes and citations omitted).
 This court agrees with the court in John and concludes that the arrest of a defendant in a criminal case is a part of the administration of justice as to that case. Not only is the arrest a part of the administration of justice in a particular case, it is a vital part. This court also concludes that the arrest for a crime is an event that occurs during the “investigation” and “prosecution” of that case. The terms “investigation” and “prosecution” are words with considerable breadth and include many activities.
The next question is whether or not threats can obstruct the administration of justice. The court in John cautioned that *479 “an unpleasant exchange of words ... between a suspect and an arresting officer provides no basis for an adjustment.” Id. at 648. However, the court noted that “[i]f the police were threatened during a criminal investigation, § 3C1.1 would clearly apply.” Id. at 646. We agree. Chavarria’s comments to Deputy Tanguma were more than just an “unpleasant exchange of words.” They were threats of violence. Consequently, we conclude that a defendant who threatens a police officer with violence while a police officer is arresting or taking a defendant into custody is subject to the § 3C1.1 enhancement, but only if such threat was made with the specific intent of obstructing or impeding the administration of justice in the case for which the arrest is made.
This holding is consistent with the Application Notes to § 3C1.1. Application Note 4 provides a non-exhaustive list of the types of conduct to which the obstruction enhancement applies. Making threats to an arresting officer is not included in this list; however, making threats to a witness does trigger the enhancement. See U.S. SENTENCING Guidelines Manual § 3C1.1, cmt. n.4(a). Application Note 5 provides a nm-exhaustive list of types of conduct to which the enhancement does not apply. Making threats to an arresting officer likewise is not referred to in Application Note 5. Avoiding or fleeing from arrest does not impose the two-level enhancement, see id. § 3C1.1, cmt. n.5(d), but “escaping or attempting to escape” or “wilfully failing to appear, as ordered, for a judicial proceeding” does require the enhancement. See id. § 3C1.1, cmt. n.4(e).
As noted, neither Note 4 nor Note 5 is all inclusive, but only illustrative. Accordingly, the non-inclusion of such conduct in the enumerated list is not dis-positive .... [T]he application notes themselves provide that the list of examples is not meant to be exclusive ... “[T]he drafters of the commentary to the Sentence Guidelines recognized the obvious inability of any group drafting guidelines to encompass and list each and every example of obstruction of justice.”
John, 935 F.2d at 646-647 (citation omitted); see also Huerta, 182 F.3d at 365 (noting that the examples following § 3C1.1 are non-exhaustive).
The final question before the court is whether or not the trial court clearly erred in finding that the threats were made in an attempt to hinder the investigation of the offense. While we may or may not have reached the same finding as the district court had we been sitting as the trier of fact, we do not believe that the district court clearly erred in its finding, and so hold. See Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (clearly erroneous standard “does not entitle a reviewing court to reverse the findings of the trier of fact simply because it is convinced that it would have decided the case differently.”); United States v. Alfaro, 919 F.2d 962, 966 (5th Cir.1990) (same).
Although Chavarria argues that the threat was an outburst made as a result of pain and not intended to hinder the investigation of the underlying offense, the district court was free to reject that theory in favor of any other theory that was plausible in light of the record as a whole. See Huerta, 182 F.3d at 364. Chavarria referred to his affiliation with the prison gang the Texas Syndicate. He called attention to tattoos on his body. Furthermore, the sentencing court had before it evidence of Chavarria’s long history of violent conduct, including several stabbings, as evidence that his threats were not idle. Deputy Tanguma was aiding in Chavar-ria’s arrest immediately following the com *480 mission of the criminal conduct while the investigation at the scene of the crime was ongoing. Deputy Tanguma then later testified at the trial regarding the threats that were made to him. Under these circumstances, it was reasonable for the district court to infer that Chavarria intended to obstruct or impede the administration of justice during the investigation or prosecution of the offense of conviction.
The basic purpose of Guideline enhancements is to insure that the more culpable or egregious the conduct of a defendant, the greater the sentence. “[T]he very purpose of such adjustments is to take into account culpable conduct outside the norm.” John, 935 F.2d at 648. This court’s interpretation of § 3C1.1 in this case is consistent with the overarching purpose of the Guidelines. The conduct of a defendant who threatens to cut out the intestines of the arresting officer and to burn his house is more culpable and egregious than the conduct of a defendant who is arrested without incident.
A threat of violence may or may not result in an enhancement, just as actual violence may or may not result in an enhancement. A threat of violence or actual violence will result in an enhancement, if and only if, the defendant had the specific intent to obstruct justice when he made his threat or committed the act of violence. However, there need not be an explicit quid pro quo in order for this court to uphold a district court’s finding of specific intent. Rather, the issue on appeal is whether the district court’s conclusion, that Chavarria had the specific intent to hinder the investigation and administration of justice, is plausible in light of the record as a whole. We are called upon only to assess whether the district court’s finding was clearly erroneous.
Retrospective knowledge that Deputy Tanguma gave only minimal testimony at trial and did not participate in the formal investigation of the crime scene or the offense is a factor for the district court to consider, but that is not the end of the inquiry. The obstruction enhancement should be available to prevent a defendant such as Chavarria from attempting to obstruct or hinder the investigation and administration of justice by any police officer involved in the investigation of the crime scene or apprehension or holding of a defendant. It is reasonable to expect that a police officer participating in the arrest of a criminal defendant is likely to testify at an ensuing criminal trial. Chavarria should not benefit from the mere fortuity that Deputy Tanguma gave only limited testimony at the ensuing criminal trial. The analysis should be prospective at the time of the occurrence, not retrospective after the trial has taken place.
It is reasonable to infer from this, and from other facts, that at the time Chavar-ria made his threats, he had the specific intent to intimidate Deputy Tanguma so as to hinder the administration of justice. Based on the foregoing, we conclude that the district court’s finding that Chavarria’s conduct was intended to hinder the investigation was not clearly erroneous. Thus, the district court did not err in applying a two-level enhancement for obstruction of justice.
Chavarria cites to United States v. Ahmed, 324 F.3d 368 (5th Cir.2003), and argues that for the obstruction enhancement to apply, the statement must be shown to have significantly obstructed or impeded the official investigation or prosecution of the offense. Chavarria’s argument is misdirected. Ahmed’s sentence was enhanced under § 3C1.1 Application Note 4(g). Id. at 374. Note 4(g) specifically provides that making a materially false statement can be the basis for an enhancement only if the statement “signifi *481 cantly obstructed or impeded the official investigation or prosecution of the instant offense[.]” U.S. Sentencing Guidelines Manual § 3C1.1, emt. n.4(g). Note 4 applies only to false statements. It does not apply to threatening statements. Consequently, Ahmed is inapplicable to this case.
Defendant relies heavily on the Second Circuit case of United States v. Thomas-Hamilton, 907 F.2d 282 (2nd Cir.1990). That case is clearly distinguishable from the case at hand. The threat in that case was allegedly directed at a drug counselor that “one of us is going to be hurt.” The threat was not nearly so specific or egregious as the threat in the case at bar which was to cut out the arresting officer’s intestines and to burn his house. But the main distinction between Thomas-Hamilton and this case is that the trial court in Thomas-Hamilton did not find “specific intent.” The sentencing court in Thomas-Hamilton said that it was “ ‘at a loss to ... figure out ... what [Thomas-Hamilton’s] intent was.’ ” Id. at 285 (alteration in original). The Second Circuit held that “[t]he imposition of a section 3C1.1 enhancement in the absence of a specific finding of intent to obstruct justice simply cannot be reconciled with our holding in Stroud.” Id. A finding of specific intent to obstruct justice is without question required under § 3C1.1. Greer, 158 F.3d at 241. In the case at bar, the district court, unlike the court in Thomas-Hamilton, specifically found that Chavarria’s threats were made with the intent to hinder the administration of justice during the investigation of the offense of conviction.
It should be noted that the alleged threat in Thomas-Hamilton was made not during the investigation or prosecution of the case but rather during the sentencing phase of the case. The sentencing phase of a trial was not included in § 3C1.1 until after Thomas-Hamilton was decided. The enhancement in Thomas-Hamilton was reversed because the appellate court held that the trial court made no finding of specific intent. That was the central holding in Thomas-Hamilton. But the court went further. Based on the language of § 3C1.1 in effect at the time of Thomas-Hamilton’s sentencing, the court stated that § 3C1.1 could not support an enhancement under the facts of that case, but suggested that another subsection of § 3C1.1 could be the basis for an enhancement. Based on this advisory opinion, dicta, or alternate holding, Thomas-Hamilton has been cited for the proposition that § 3C1.1 cannot be the basis for an enhancement for threats made against a drug counselor during the sentencing phase of the trial. It is questionable whether Thomas-Hamilton remains good law for that proposition in view of the fact that § 3C1.1 has been significantly amended since that decision was rendered.[2]

*482
B. Constitutional Challenges to § 922(g)(1)

Chavarria challenges the constitutionality of § 922(g)(1) on two separate grounds. First, he argues that § 922(g)(1) violates his right to keep and bear arms under the Second Amendment. Second, he argues that § 922(g)(1) is unconstitutional because the statute does not require a substantial effect on interstate commerce and that the evidence was insufficient to establish a “substantial effect.” This court has rejected both of these contentions in prior published opinions. See United States v. Dar-rington, 351 F.3d 632, 633-34 (5th Cir. 2003); and United States v. Daugherty, 264 F.3d 513, 518 (5th Cir.2001). Accordingly, these issues are foreclosed on appeal.
CONCLUSION
For the foregoing reasons, we AFFIRM Chavarria’s sentence.

. The sentencing transcript reveals that witness tampering as a basis for the obstruction enhancement simply had not been brought to the trial court's attention until after it had already determined that the obstruction enhancement should apply based on Chavarria's threats against Deputy Tanguma. When the witness tampering allegation was mentioned by defense counsel, the court stated that “I don’t have to take that into consideration, and I haven't in overruling the objection.” The trial court apparently felt that the threat made at the time of arrest was sufficient without considering the threats allegedly made to witnesses.

. At the time Thomas-Hamilton was decided, § 3C1.1 of the Guidelines provided for an enhancement if a defendant impeded or obstructed or attempted to impede or obstruct the administration of justice during an underlying investigation or prosecution of an offense. It did not apply to the administration of justice during the sentencing phase of a case. See Thomas-Hamilton, 907 F.2d at 283, 285. Thomas-Hamilton was decided on June 29, 1990. Four months later on November 1, 1990, § 3C1.1 was amended to provide for an enhancement if a defendant obstructed or attempted to obstruct the administration of justice during the sentencing of an offense as well as during the investigation or prosecution of an offense. See John 935 F.2d at 646 n. 1.
The commentary to the Guideline in effect at the time Thomas-Hamilton was decided also provided that " 'suspect testimony and statements should be evaluated in a light most favorable to the defendant.’ ” Thomas-Hamilton, 907 F.2d at 285. That language has since been taken out of the commentary. See Greer, 158 F.3d at 240 n. 7 ("Effective November 1, 1997, the Sentencing Guidelines *482 were amended so as to delete 'such [sic] testimony or statements should be evaluated in a light most favorable to the defendant...").
The commentary to § 3C1.1 in effect at the time Thomas-Hamilton was sentenced also provided "ITlhis section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense.” Thomas-Hamilton, 907 F.2d at 285. "This introductory paragraph was deleted as part of the November 1990 Amendments.” John, 935 F.2d at 647 n. 3.
In view of the above three significant amendments to § 3C1.1, it is questionable whether Thomas-Hamilton remains good authority for the proposition that § 3C1.1 cannot serve as the basis for an enhancement as to a defendant who threatens a drug counsel- or.