UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-20812

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PABLO HUERTA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

July 27, 1999

Before GARWOOD, DUHÉ, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Pablo Huerta appeals the sentence imposed upon him by the district court. He argues that his flight from arresting officers did not constitute obstruction of justice and therefore did not warrant an offense-level enhancement under section 3C1.1 of the United States Sentencing Guidelines. We affirm.

I

Huerta pleaded guilty, without a written plea agreement, to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). According to Huerta's presentence report (PSR), on

December 5, 1997, Freddie Woodard was riding his bicycle in an apartment complex in Houston, Texas. Huerta approached Woodard, pointed a gun at him, and demanded his bicycle. Woodard surrendered the bicycle and ran for safety. Minutes later, Woodard saw two Houston patrol officers and informed them of the robbery.

The officers entered and searched a building on the southern side of the complex and found Woodard's bicycle at the bottom of a stairway. The officers noticed Huerta on the top balcony, attempting to hide. Woodard identified Huerta as the robber. The officers found that Huerta had hidden a .357 Magnum Taurus revolver under a doormat. The weapon contained six unfired .357 Magnum Winchester/hollow point cartridges. The officers handcuffed Huerta, took him into custody, and transported him to the nearby Houston Police Department storefront. As the officers were leading Huerta into the storefront, Huerta ran from them. One of the officers chased Huerta approximately 250 yards and apprehended him.

Based on Huerta's flight, the PSR recommended a two-point upward adjustment for obstruction of justice.[1] Huerta objected to the recommended increase. He did not concede that he had fled from the arresting officers but argued that, even if he had, the alleged conduct constituted a mere attempt to avoid arrest that would not

---

[1]The PSR cited section 3C1.2 of the Sentencing Guidelines to support this recommendation. The Addendum to the PSR acknowledged that its reference to section 3C1.2 resulted from a typographical error and that section 3C1.1 was the correct authority for its recommendation.

support an obstruction-of-justice enhancement under section 3C1.1 of the Sentencing Guidelines. That section directs a two-level enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." U.S. Sentencing Guidelines Manual § 3C1.1 (1997).

At the sentencing hearing, Huerta's counsel asserted that Huerta had not run from the officers. Counsel stated that there was no evidence of flight other than "some report" and that the government should be required to produce evidence of the alleged conduct, instead of relying solely on the PSR. Citing an application note following section 3C1.1, counsel further posited that, even if the court accepted the PSR, mere flight to avoid apprehension does not constitute obstruction of justice.

The district court, concluding that the PSR adequately addressed the issue of Huerta's flight, declined to hold an evidentiary hearing. The court then overruled Huerta's objection and applied section 3C1.1's two-point adjustment for obstruction of justice. Based on a total offense level of twenty-four, a criminal history category of five, and a resulting guideline imprisonment range of ninety-two to 115 months, the district court sentenced Huerta to a 115-month term of imprisonment. Huerta filed a timely notice of appeal.

We address whether the district court erred in relying on the PSR as the basis for the challenged enhancement and whether Huerta's conduct may constitute obstruction of justice under section 3C1.1.

This Court reviews the district court's interpretation or application of the Sentencing guidelines *de novo* and its factual findings, such as a finding of obstruction of justice, for clear error. *See United States v. Upton*, 91 F.3d 677, 687 (5th Cir. 1996). As long as a factual finding is plausible in light of the record as a whole, it is not clearly erroneous. *See United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998). We uphold a sentence unless it was imposed in violation of law or as a result of an incorrect application of the Sentencing Guidelines or it is outside the range of the applicable guideline and is unreasonable. *See United States v. Garcia*, 962 F.2d 479, 480-81 (5th Cir. 1992). "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38, 113 S. Ct. 1913, 1915 (1993).

A

According to Huerta, it was error for the district court to rely on the PSR and apply the section 3C1.1 enhancement without

requiring the government to present proof beyond the PSR.

As a general rule, a PSR bears sufficient indicia of reliability, such that a sentencing judge may consider it as evidence in making the factual determinations required by the Sentencing Guidelines. *See Alford*, 142 F.3d at 831-32. Federal Rule of Criminal Procedure 32(c)(1) provides:

> At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing.

A district court may rely on a presentence report to satisfy Rule 32. *See, e.g.*, *United States v. Brito*, 136 F.3d 397, 415-17 (5th Cir.) ("In order to satisfy Rule 32, the court may make implicit findings by adopting the PSR."), *cert. denied*, – U.S. –, 118 S. Ct. 1817 (1998). We have also held:

> Although a district court must resolve disputed issues of fact if it intends to use those facts as a basis for sentencing, the court can adopt facts contained in a PSR without inquiry, if those facts ha[ve] an adequate evidentiary basis and the defendant does not present rebuttal evidence.

*United States v. Puig-Infante*, 19 F.3d 929, 943 (5th Cir. 1994). A defendant's rebuttal evidence must demonstrate that the information contained in the PSR is "materially untrue, inaccurate

5

or unreliable," and "[m]ere objections do not suffice as competent rebuttal evidence." *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998) (citations omitted).

Huerta's written but unsworn objections to the PSR stated only that "the defendant does not concede that he attempted to flee." At the sentencing hearing, defense counsel asserted that Huerta had not fled and requested that the district court direct the government to produce witnesses who would substantiate the PSR's assertion that Huerta had run from the police officers. Because Huerta failed to proffer adequate rebuttal evidence, the district court erred neither in refusing to require the government to produce witnesses nor in relying on the factual information provided by the PSR. *See United States v. Mitchell*, 166 F.3d 748, 754 (5th Cir. 1999) ("If the defendant does not submit affidavits or other evidence to rebut the information in the PSR, the district court may adopt its findings without further inquiry or explanation."); *see also United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995) ("The defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it. The court is free to disregard a defendant's unsworn assertions that the PSR is unreliable."). The district court's finding that the defendant fled is not clearly erroneous.

Huerta next argues that his conduct did not warrant the two-level enhancement under section 3C1.1 of the United States Sentencing Guidelines. According to Huerta, his flight did not constitute obstruction of justice within the meaning of the guideline.

The commentary following section 3C1.1 provides non-exhaustive examples of conduct to which the obstruction-of-justice adjustment is intended to apply, as well as conduct to which it is not intended to apply.[2] Application Note 3(e) instructs that the adjustment applies to "escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding." Application Note 4(d), however, indicates that the type of conduct that ordinarily does not warrant the adjustment includes "avoiding or fleeing from arrest."

Huerta does not dispute that he was in custody but argues that his conduct nonetheless fits within Application Note 4(d) because his flight was brief, spontaneous, and contemporaneous with his arrest. Whether Huerta's flight may constitute obstruction of justice within the meaning of § 3C1.1 of the United States

---

[2]The PSR and the district court relied on the 1997 *Guidelines Manual* to calculate the defendant's sentence. We refer to the application notes as they appear in that manual. The subsequent amendments to the commentary accompanying section 3C1.1 do not affect our resolution of the issue presented.

Sentencing Guidelines is *res nova* in this circuit. *See United States v. Pierce*, 893 F.2d 669, 677 (5th Cir. 1990) (leaving open the question whether flight alone constitutes obstruction of justice under section 3C1.1). There is a split among those circuits that have addressed this question. One line of authority determines the propriety of applying the enhancement by focusing on whether the defendant was in custody at the time of his flight. *See United States v. McDonald*, 165 F.3d 1032 (6th Cir. 1999); *United States v. Williams*, 152 F.3d 294, 304 (4th Cir. 1998). Another line of cases focuses on whether the defendant's acts were calculated, as opposed to spontaneous and instinctive. *See, e.g.*, *United States v. Draves*, 103 F.3d 1328 (7th Cir.), *cert. denied*, – U.S. –, 117 S. Ct. 2528 (1997); *United States v. Stroud*, 893 F.2d 504 (2d Cir. 1990). We agree with the approach taken by the Fourth and Sixth Circuits and "read the commentaries as recognizing a clear dichotomy between the state of being arrested and that of being in custody." *Williams*, 152 F.3d at 304. We therefore hold that flight from law enforcement officers who, pursuant to a lawful arrest, have exercised custody over the defendant may constitute obstruction of justice under section 3C1.1, even if such flight closely follows the defendant's arrest.

Huerta notes that we have held that the section 3C1.1 enhancement is appropriate only when the defendant's conduct is willful. *See United States v. Greer*, 158 F.3d 228, 239 (5th Cir.

8

1998); *United States v. O'Callaghan*, 106 F.3d 1221, 1223 (5th Cir. 1997). He argues that the district court's focus on the question of custody amounted to a misapplication of the guideline because it did not explicitly address the issue of willfulness. We agree that the question whether a defendant's flight was an escape from custody may not be a precise substitute for the question whether a defendant willfully obstructed or attempted to obstruct justice. Before the district court, however, Huerta neither suggested that his conduct was not willful nor objected to the absence of a specific finding of willfulness.

To the extent that Huerta's complaint pertains to the district court's failure to make an explicit finding that he had the specific intent to obstruct justice, we review for plain error because Huerta did not raise this issue before the district court. *See United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 1776 (1993). Pursuant to Federal Rule of Criminal Procedure 52(b), this Court may correct forfeited errors only when the defendant demonstrates that (1) there is an error, (2) the error is plain, and (3) the error affects substantial rights. *See id.* at 732-35, 113 S. Ct. at 1776-78; *United States v. Calverly*, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc). If the defendant makes this showing, we have discretion to correct the error and will do so if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Ravitch*, 128 F.3d 865, 869

(5th Cir. 1997) (per curiam). In the context of sentencing, we uphold offense-level enhancements if "the record as a whole demonstrates that the adjustments did not result in a miscarriage of justice." *United States v. Pattan*, 931 F.2d 1035, 1043 (5th Cir. 1991). There is no evidence in the record that Huerta's flight was not volitional or that it was motivated by anything other than a desire to impede the administration of justice--that is, to avoid the prosecution that would have inevitably followed his arrest. Although we have expressed a clear preference that a sentencing court make a specific finding of willfulness in applying section 3C1.1, *see Greer*, 158 F.3d at 239, any error in not doing so in Huerta's case did not result in a miscarriage of justice.

III

For the foregoing reasons, we conclude that the district court did not err in finding that Huerta's conduct constituted an escape from custody warranting the obstruction-of-justice enhancement under section 3C1.1 of the United States Sentencing Guidelines. We therefore AFFIRM.