United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 12, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

_____

No. 03-40622
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE CHAVARRIA,

Defendant-Appellant.

_____

Appeal from United States District Court
for the Southern District of Texas, Corpus Christi

_____

Before JONES, DENNIS, and PICKERING, Circuit Judges.

CHARLES W. PICKERING, SR, Circuit Judge:

Defendant-Appellant Jose Chavarria appeals the district court's enhancement of his sentence for obstruction of justice. We affirm.

Jose Chavarria was charged in a two-count superseding indictment with possession of an unregistered sawed-off shotgun, 26 U.S.C. §§ 5861(d) and 5871, and being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2). A jury convicted him on both counts.

On appeal, Chavarria contends that (1) the district court erred when it imposed an obstruction of justice enhancement for threats made to an arresting officer; (2) § 922(g)(1) is unconstitutional under the Second Amendment; and (3) § 922(g)(1) is unconstitutional because it does not require a substantial effect on interstate commerce; or in the alternative, the evidence

was insufficient to show a substantial effect on interstate commerce.

BACKGROUND

Chavarria was involved in a confrontation at a residence in Alice, Texas on May 4, 2002. During this incident, he brandished a sawed-off shotgun, pointing it at numerous people including young children and a nine-month-old infant. During the struggle to take the weapon away from Chavarria, Chavarria inflicted a one-inch cut in the back of the head of one of those who took the weapon from Chavarria. After the weapon was taken from him, he left, but threatened to return and did return a short time later with his father and another small gun which he pointed at a number of people. Testimony at trial established that the shotgun was manufactured in Connecticut.

Shortly after the confrontation, police officers stopped a Dodge Neon driven by Chavarria's father in which Chavarria was riding as a passenger. Chavarria was placed in handcuffs. As he was lying on the ground, in handcuffs, he complained of pain in his rib area. One of the arresting officers removed Chavarria's handcuffs. Deputy Carlos Tanguma was called to the scene as back up. When Deputy Tanguma arrived, the other officers were seeking medical treatment for Chavarria. Deputy Tanguma again placed Chavarria in handcuffs and then placed him in the police car. Deputy Tanguma testified that Chavarria threatened that he would "pick me up and leave me with my intestines hanging out and he was going to burn my house down, and that I didn't know who I was messing with." Chavarria also called attention to the tattoos on his body and advised Deputy Tanguma that he was a member of a prison gang known as the Texas Syndicate.

Prior to trial, the district court conducted a hearing regarding threats allegedly made to some of the government's witnesses. There was evidence that Chavarria's girlfriend and father had threatened witnesses. The government did not present direct evidence of Chavarria's involvement in threatening witnesses, but as a result of this hearing, the court restricted Chavarria's access to the phone, mail, and visitors.

Based on the foregoing threats, a two-level enhancement for obstruction of justice pursuant to U.S. Sentencing Guideline § 3C1.1 was recommended in the pre-sentence investigation report. *See* U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 (2001). Chavarria objected to the two-level enhancement and argued that the outburst directed at Deputy Tanguma resulted from intense pain, not any attempt to obstruct justice. The district court did not take the witness tampering into account in ruling on Chavarria's objection,[1] stating at one point in the proceeding "actions of other people are not necessarily attributed to you." Nevertheless, the district court overruled Chavarria's objection and found that the threat against Deputy Tanguma was intended to obstruct justice and to hinder the investigation of the offense. The court then granted a two-level enhancement for obstruction of justice.

---

[1] The sentencing transcript reveals that witness tampering as a basis for the obstruction enhancement simply had not been brought to the trial court's attention until after it had already determined that the obstruction enhancement should apply based on Chavarria's threats against Deputy Tanguma. When the witness tampering allegation was mentioned by defense counsel, the court stated that "I don't have to take that into consideration, and I haven't in overruling the objection." The trial court apparently felt that the threat made at the time of arrest was sufficient without considering the threats allegedly made to witnesses.

DISCUSSION

   *A. Obstruction of Justice Enhancement*

   We review the district court's interpretation or application of the Sentencing Guidelines *de novo,* but review the factual findings for clear error. *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999). The determination of whether § 3C1.1 covers a threat occurring while a defendant is being arrested and taken into custody involves an application or interpretation of the Guidelines and is thus an issue that this court reviews *de novo*. The question of whether the threats were made with the intent to obstruct or impede the administration of justice is a fact question which this court reviews for clear error. *United States v. Greer*, 158 F.3d 228, 233 (5th Cir. 1998) ("We review . . . factual findings, such as a finding of obstruction of justice, for clear error . . . ."). "As long as a factual finding is plausible in light of the record as a whole, it is not clearly erroneous." *Huerta*, 182 F.3d at 364.

   Chavarria's appeal presents an issue that has not previously been decided by the Fifth Circuit, making this a case of first impression. The issue is: Can a defendant's sentence be enhanced under § 3C1.1 because the defendant threatens violence against a law enforcement officer at the time he is being arrested and taken into custody for the offense of conviction, if such threats were made with the specific intent to obstruct justice? This question can best be answered by analyzing the precise wording of that section of the Guidelines.

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction . . . increase the offense level by 2 levels.

U.S. SENTENCING GUIDELINES MANUAL § 3C1.1. Thus, the Guideline interpretation issue before

4

the court boils down to whether arresting and taking a defendant into custody is part of the "administration of justice" in that particular case and whether the arrest occurs during the "investigation" or "prosecution" of the case.

The Fourth Circuit's analysis in *United States v. John*, 935 F.2d 644 (4th Cir. 1991), is instructive:

> In statutory interpretation, "the starting point is the language of the statute." The plain language of § 3C1.1 encompasses administration of justice in the broadest sense–from the beginning of the criminal justice process through all aspects of prosecution. Willful interference with police activity can operate as an obstruction of justice in certain circumstances. Police officers are intimately involved in the "investigation" and "prosecution" of the offense, including the arrest of suspects. . . . To hold that a defendant's conduct during the course of an arrest could never constitute obstruction of justice would be to carve such conduct out of a provision whose inclusive language does not invite exception.

*Id.* at 646. (footnotes and citations omitted).

This court agrees with the court in *John* and concludes that the arrest of a defendant in a criminal case is a part of the administration of justice as to that case. Not only is the arrest a part of the administration of justice in a particular case, it is a vital part. This court also concludes that the arrest for a crime is an event that occurs during the "investigation" and "prosecution" of that case. The terms "investigation" and "prosecution" are words with considerable breadth and include many activities.

The next question is whether or not threats can obstruct the administration of justice. The court in *John* cautioned that "an unpleasant exchange of words . . . between a suspect and an arresting officer provides no basis for an adjustment." *Id.* at 648. However, the court noted that "[i]f the police were threatened during a criminal investigation, § 3C1.1 would clearly apply." *Id.* at 646. We agree. Chavarria's comments to Deputy Tanguma were more than just an

5

"unpleasant exchange of words." They were threats of violence. Consequently, we conclude that a defendant who threatens a police officer with violence while a police officer is arresting or taking a defendant into custody is subject to the § 3C1.1 enhancement, but only if such threat was made with the specific intent of obstructing or impeding the administration of justice in the case for which the arrest is made.

This holding is consistent with the Application Notes to § 3C1.1. Application Note 4 provides a *non-exhaustive* list of the types of conduct to which the obstruction enhancement applies. Making threats to an arresting officer is not included in this list; however, making threats to a witness does trigger the enhancement. *See* U.S. SENTENCING GUIDELINES MANUAL § 3C1.1, cmt. n.4(a). Application Note 5 provides a *non-exhaustive* list of types of conduct to which the enhancement does not apply. Making threats to an arresting officer likewise is not referred to in Application Note 5. Avoiding or fleeing from arrest does not impose the two-level enhancement, *see id.* § 3C1.1, cmt. n.5(d), but "escaping or attempting to escape" or "wilfully failing to appear, as ordered, for a judicial proceeding" does require the enhancement. *See id.* § 3C1.1, cmt. n.4(e).

> As noted, neither Note 4 nor Note 5 is all inclusive, but only illustrative. Accordingly, the non-inclusion of such conduct in the enumerated list is not dispositive. . . . [T]he application notes themselves provide that the list of examples is not meant to be exclusive . . . "[T]he drafters of the commentary to the Sentence Guidelines recognized the obvious inability of any group drafting guidelines to encompass and list each and every example of obstruction of justice."

*John*, 935 F.2d at 646-647 (citation omitted); *see also Huerta*, 182 F.3d at 365 (noting that the examples following § 3C1.1 are non-exhaustive).

The final question before the court is whether or not the trial court clearly erred in finding that the threats were made in an attempt to hinder the investigation of the offense. While we may

6

or may not have reached the same finding as the district court had we been sitting as the trier of fact, we do not believe that the district court clearly erred in its finding, and so hold. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (clearly erroneous standard "does not entitle a reviewing court to reverse the findings of the trier of fact simply because it is convinced that it would have decided the case differently."); *United States v. Alfaro*, 919 F.2d 962, 966 (5th Cir. 1990) (same).

Although Chavarria argues that the threat was an outburst made as a result of pain and not intended to hinder the investigation of the underlying offense, the district court was free to reject that theory in favor of any other theory that was plausible in light of the record as a whole. *See Huerta*, 182 F.3d at 364. Chavarria referred to his affiliation with the prison gang the Texas Syndicate. He called attention to tattoos on his body. Furthermore, the sentencing court had before it evidence of Chavarria's long history of violent conduct, including several stabbings, as evidence that his threats were not idle. Deputy Tanguma was aiding in Chavarria's arrest immediately following the commission of the criminal conduct while the investigation at the scene of the crime was ongoing. Deputy Tanguma then later testified at the trial regarding the threats that were made to him. Under these circumstances, it was reasonable for the district court to infer that Chavarria intended to obstruct or impede the administration of justice during the investigation or prosecution of the offense of conviction.

The basic purpose of Guideline enhancements is to insure that the more culpable or egregious the conduct of a defendant, the greater the sentence. "[T]he very purpose of such adjustments is to take into account culpable conduct outside the norm." *John*, 935 F.2d at 648. This court's interpretation of § 3C1.1 in this case is consistent with the overarching purpose of

7

the Guidelines. The conduct of a defendant who threatens to cut out the intestines of the arresting officer and to burn his house is more culpable and egregious than the conduct of a defendant who is arrested without incident.

A threat of violence may or may not result in an enhancement, just as actual violence may or may not result in an enhancement. A threat of violence or actual violence will result in an enhancement, *if and only if*, the defendant had the *specific intent* to obstruct justice when he made his threat or committed the act of violence. However, there need not be an explicit *quid pro quo* in order for this court to uphold a district court's finding of specific intent. Rather, the issue on appeal is whether the district court's conclusion, that Chavarria had the specific intent to hinder the investigation and administration of justice, is plausible in light of the record as a whole. We are called upon only to assess whether the district court's finding was clearly erroneous.

Retrospective knowledge that Deputy Tanguma gave only minimal testimony at trial and did not participate in the formal investigation of the crime scene or the offense is a factor for the district court to consider, but that is not the end of the inquiry. The obstruction enhancement should be available to prevent a defendant such as Chavarria from attempting to obstruct or hinder the investigation and administration of justice by any police officer involved in the investigation of the crime scene or apprehension or holding of a defendant. It is reasonable to expect that a police officer participating in the arrest of a criminal defendant is likely to testify at an ensuing criminal trial. Chavarria should not benefit from the mere fortuity that Deputy Tanguma gave only limited testimony at the ensuing criminal trial. The analysis should be prospective at the time of the occurrence, not retrospective after the trial has taken place.

It is reasonable to infer from this, and from other facts, that at the time Chavarria made his

8

threats, he had the specific intent to intimidate Deputy Tanguma so as to hinder the administration of justice. Based on the foregoing, we conclude that the district court's finding that Chavarria's conduct was intended to hinder the investigation was not clearly erroneous. Thus, the district court did not err in applying a two-level enhancement for obstruction of justice.

Chavarria cites to *United States v. Ahmed*, 324 F.3d 368 (5th Cir. 2003), and argues that for the obstruction enhancement to apply, the statement must be shown to have *significantly* obstructed or impeded the official investigation or prosecution of the offense. Chavarria's argument is misdirected. Ahmed's sentence was enhanced under § 3C1.1 Application Note 4(g). *Id.* at 374. Note 4(g) specifically provides that making a materially false statement can be the basis for an enhancement only if the statement "significantly obstructed or impeded the official investigation or prosecution of the instant offense[.]" U.S. SENTENCING GUIDELINES MANUAL § 3C1.1, cmt. n.4(g). Note 4 applies only to false statements. It does not apply to threatening statements. Consequently, *Ahmed* is inapplicable to this case.

Defendant relies heavily on the Second Circuit case of *United States v. Thomas-Hamilton*, 907 F.2d 282 (2nd Cir. 1990). That case is clearly distinguishable from the case at hand. The threat in that case was allegedly directed at a drug counselor that "one of us is going to be hurt." The threat was not nearly so specific or egregious as the threat in the case at bar which was to cut out the arresting officer's intestines and to burn his house. But the main distinction between *Thomas-Hamilton* and this case is that the trial court in *Thomas-Hamilton* did not find "specific intent." The sentencing court in *Thomas-Hamilton* said that it was "'at a loss to . . . figure out . . . what [Thomas-Hamilton's] intent was.'" *Id*. at 285 (alteration in original). The Second Circuit held that "[t]he imposition of a section 3C1.1 enhancement in the absence of a specific finding of

9

intent to obstruct justice simply cannot be reconciled with our holding in *Stroud*." *Id*. A finding

of specific intent to obstruct justice is without question required under § 3C1.1. *Greer*, 158 F.3d

at 241. In the case at bar, the district court, unlike the court in *Thomas-Hamilton*, specifically

found that Chavarria's threats were made with the intent to hinder the administration of justice

during the investigation of the offense of conviction.

It should be noted that the alleged threat in *Thomas-Hamilton* was made not during the

investigation or prosecution of the case but rather during the sentencing phase of the case. The

sentencing phase of a trial was not included in § 3C1.1 until after *Thomas-Hamilton* was decided.

The enhancement in *Thomas-Hamilton* was reversed because the appellate court held that the trial

court made no finding of specific intent. That was the central holding in *Thomas-Hamilton*. But

the court went further. Based on the language of § 3C1.1 in effect at the time of Thomas-

Hamilton's sentencing, the court stated that § 3C1.1 could not support an enhancement under the

facts of that case, but suggested that another subsection of § 3C1.1 could be the basis for an

enhancement. Based on this advisory opinion, dicta, or alternate holding, *Thomas-Hamilton* has

been cited for the proposition that § 3C1.1 cannot be the basis for an enhancement for threats

made against a drug counselor during the sentencing phase of the trial. It is questionable whether

*Thomas-Hamilton* remains good law for that proposition in view of the fact that § 3C1.1 has been

significantly amended since that decision was rendered.[2]

---

[2] At the time *Thomas-Hamilton* was decided, § 3C1.1 of the Guidelines provided for an enhancement if a defendant impeded or obstructed or attempted to impede or obstruct the administration of justice *during an underlying investigation or prosecution* of an offense. It did not apply to the administration of justice *during the sentencing* phase of a case. *See Thomas-Hamilton*, 907 F.2d at 283, 285. *Thomas-Hamilton* was decided on June 29, 1990. Four months later on November 1, 1990, § 3C1.1 was amended to provide for an enhancement if a defendant obstructed or attempted to obstruct the administration of justice during the sentencing of an

*B. Constitutional Challenges to § 922(g)(1)*

Chavarria challenges the constitutionality of § 922(g)(1) on two separate grounds. First, he argues that § 922(g)(1) violates his right to keep and bear arms under the Second Amendment. Second, he argues that § 922(g)(1) is unconstitutional because the statute does not require a substantial effect on interstate commerce and that the evidence was insufficient to establish a "substantial effect." This court has rejected both of these contentions in prior published opinions. *See United States v. Darrington*, 351 F.3d 632, 633-34 (5th Cir. 2003); and *United States v. Daugherty*, 264 F.3d 513, 518 (5th Cir. 2001). Accordingly, these issues are foreclosed on appeal.

CONCLUSION

For the foregoing reasons, we AFFIRM Chavarria's sentence.

---

offense as well as during the investigation or prosecution of an offense. *See John* 935 F.2d at 646 n.1.

The commentary to the Guideline in effect at the time *Thomas-Hamilton* was decided also provided that "'suspect testimony and statements should be evaluated in a light most favorable to the defendant.'" *Thomas-Hamilton*, 907 F.2d at 285. That language has since been taken out of the commentary. *See Greer*, 158 F.3d at 240 n.7 ("Effective November 1, 1997, the Sentencing Guidelines were amended so as to delete 'such [sic] testimony or statements should be evaluated in a light most favorable to the defendant . . . .'").

The commentary to § 3C1.1 in effect at the time Thomas-Hamilton was sentenced also provided "[T]his section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense." *Thomas-Hamilton*, 907 F.2d at 285. "This introductory paragraph was deleted as part of the November 1990 Amendments." *John*, 935 F.2d at 647 n.3.

In view of the above three significant amendments to § 3C1.1, it is questionable whether *Thomas-Hamilton* remains good authority for the proposition that § 3C1.1 cannot serve as the basis for an enhancement as to a defendant who threatens a drug counselor.

11

ENDRECORD

DENNIS, Circuit Judge, concurring in part and dissenting in part:

I concur in dismissing Chavarria's constitutional challenges to 18 U.S.C. § 922(g)(1), but I dissent from affirmance of the sentence. There is no support in the record for the district court's factual finding that Chavarria intended by his purely verbal threats to hinder the investigation or prosecution of his offense. The district court and the majority erred in the interpretation of U.S.S.G. §3C1.1 and its application to the evidence. Consequently, the enhancement, which was based on clear errors of fact and errors of law, should be vacated.

Jose Chavarria, who had been convicted of a felony, was arrested on May 4, 2002 for threatening his girlfriend's acquaintances with a sawed-off shotgun. After one of them wrestled the gun from Chavarria,[3] he was arrested by police while driving away.[4]

Officer Tanguma was returning from a SWAT team meeting, and because his radio was not working, called a fellow officer to see "what's going on?"[5] His fellow officer told him about a disturbance involving a gun at 1511 Garza Street, and Officer

---

[3]See R. Vol. 5, Tr. at 105.

[4]Id. at 111-12.

[5]Id. at 124, lines 18-20.

13

Tanguma proceeded toward that address.[6]  Arriving at the arrest scene, some distance from 1511 Garza Street, Officer Tanguma observed that Chavarria was handcuffed and on the ground.[7]  Fellow officers at the scene told Officer Tanguma that they were awaiting medical attention for Chavarria, who claimed to have been injured during the disturbance.[8]  Officer Tanguma went to his police car to put on his "gear."[9]

When he returned, Officer Tanguma noticed that Chavarria was still lying on the ground but that one of the other officers had removed the handcuffs.[10]  Aware that Chavarria was claiming an injury, Officer Tanguma decided to place him in a police car until medical help arrived[11] and to re-handcuff him as well.[12]

Chavarria did not resist being placed in the police car, but Officer Tanguma testified that he had a "little struggle" with Chavarria while attempting to re-handcuff him.[13]  After being re-

---

[6]Id.

[7]Id. at 125, lines 19-20.

[8]Id. at lines 22-24; 128 lines 6-11.

[9]R. Vol 5, Tr. at 125-126.

[10]Id. at 126, lines 2-6.

[11]Id.

[12]Id. at lines 14-16.

[13]See R. Vol. 5, Tr. 126, lines 19-20 ("We sat him in the car, and at that time I tried to re-handcuff him again because I

14

handcuffed, Chavarria threatened to stab Officer Tanguma and burn his house down for "messing with" him. Chavarria told the officer that he was a member of the Texas Prison Syndicate, a notorious prison gang, and displayed several tattoos.[14]

At Chavarria's trial, Officer Tanguma gave testimony solely about Chavarria's post-arrest outburst and threats.[15] Thus, Officer Tanguma did not testify that he read Chavarria his rights, interrogated him, or participated in any investigation in Chavarria's case. Chavarria was convicted by a jury of being a felon in possession of a firearm and of possession of an unregistered sawed-off shotgun. As recommended in the probation officer's pre-sentence report, the district court included a two-level increase in Chavarria's offense level for obstruction of justice. Chavarria was sentenced to 120 months' imprisonment for each count, with each sentence to be served concurrently.

In enhancing Chavarria's sentence, the district court stated "It's clear that Mr. Chavarria, who didn't have any compunction with threatening 17 people with this gun, certainly could have

---

knew that, you know, he was still under investigation. . .so, when I went to handcuff him again, he became, you know, upset with me, and we got into kind of a little struggle ensued, and the we finally got him handcuffed again. He threatened me.").

[14]Id. at 127.

[15]See R. Vol. 5, Tr. at 124-129; see also infra note 18.

15

carried out his threat to Officer Tanguma, and it was obstruction of justice, and it does appear that these threats were made to hinder the investigation of Mr. Jose Chavarria for the very charges that he was subsequently, of which he was subsequently convicted."[16] The district court did not rely on the pre-sentence report's additional allegations of witness tampering by Chavarria's father and girlfriend in reaching its sentencing decision.[17] Chavarria's objections to the obstruction of justice enhancement were overruled by the district court.

This court reviews the district court's finding that Chavarria's threats were made with the intent to hinder the investigation for clear error. A factual finding is clearly erroneous when the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.[18] A district court's fact finding is obviously clearly erroneous when there is no evidence in the record to support the

---

[16]See Sent. Tr. at 20, lines 7-15.

[17]See Sent. Tr. at 20-21 (stating "I don't have to take that into consideration **and I haven't** in overruling the objection" in response to Chavarria's objection to the Government's allegations of witness tampering by Chavarria's father and girlfriend and the pre-sentence report's recommendation that these allegations be an alternate ground for the obstruction of justice enhancement)(emphasis added).

[18]See Thanh Long Partnership v. Highlands Ins. Co., 32 F.3d 189, (5th Cir. 1993)(citing Glass v. Petro-Tex Chem. Corp., 757 F.2d 1554, 1559 (5th Cir. 1985)).

16

court's finding.[19]

Contrary to the majority, I believe that the record shows that the district court's finding that Chavarria intended to hinder the investigation of his firearms offense was clearly erroneous. The district court's stated reasons for imposing the sentence enhancement alluded to Chavarria's threatening 17 people with his gun, the conduct leading to his arrest, and his post-arrest verbal threats to Officer Tanguma. Chavarria's conduct at 1511 Garza Street has little, if any, bearing on whether he later intended to hinder the investigation by his threats to Officer Tanguma at a different location. The district court did not indicate whether it found that Chavarria threatened Officer Tanguma with immediate present injury or with injury at some future indefinite time and place. At the time of those threats, however, Chavarria was handcuffed and in the police car; there is no evidence that he physically threatened the officer in conjunction with his verbal threats. Further, there was no evidence in the record to suggest that Chavarria had any reason to believe that Officer Tanguma would be able to affect the investigation, prosecution, or sentencing with respect to Chavarria's firearms offense. Moreover, in light of the district court's conclusory reasons for enhancing Chavarria's sentence, there is a reasonable possibility that the

---

[19]Group Life & Health Ins. Co. v. United States, 660 F.2d 1042, 1057 (5th Cir. 1981).

17

court was swayed by the Government's misrepresentation of the content and importance of Officer Tanguma's testimony.[20]

Thus, I am left with a firm and definite conviction that a mistake has been committed because the evidence shows plainly that: (1) Officer Tanguma's only role in the case was to take charge of Chavarria while awaiting medical attention; (2) there is nothing to indicate that Chavarria had reason to believe that the late arriving Tanguma would have been able to testify to any relevant facts against him at trial; and, (3)while handcuffed and inside a police car, Chavarria made a purely verbal threat to harm the officer, which Chavarria was clearly impotent to carry out at that time.

In <u>Stinson v. United States</u>,[21] the Supreme Court held that

---

[20]The Government claimed at sentencing that Officer Tanguma was "a critical and important witness" who testified about Chavarria's arrest and about a second gun possessed by Chavarria's father. <u>See</u> Sent. Tr. at 18, lines 5-13. ("Your Honor, Officer Tanguma testified about more than Mr. Chavarria. He also testified about the involvement of his father, Reymundo Chavarria, who was present at the scene. He also testified about the presence of a firearm that was in possession of Mr. Chavarria, of Mr. Reymundo Chavarria, which witnesses described as previously being in the possession of Mr. Jose Chavarria. He was a critical and important witness beyond the testimony that Mr. Chavarria threatened him.") But the transcript of Officer Tanguma's trial testimony **does not** support the Government's claim. Instead, the transcript reveals that Officer Tanguma testified **only** about his impressions of Chavarria's actions after Chavarria's arrest and the verbal threats that followed Tanguma's re-handcuffing of Chavarria. <u>See</u> Sentencing Tr. at 18, lines 5-13.

[21]506 U.S. 36 (1993).

18

commentary in the sentencing guidelines manual that interprets or explains a guideline is authoritative unless that commentary is inconsistent with United States Constitution, a federal statute, or that guideline itself.[22]  I do not believe that either the majority or the district court applied §3C1.1 in accord with the Supreme Court's teaching.  It appears that neither gave authoritative weight to §3C1.1's commentary.

That commentary expressly recognizes that conduct warranting the obstruction of justice sentencing enhancement is not "subject to precise definition" and could "vary widely in nature, degree of planning, and seriousness."[23]  The commentary also provides examples of conduct that does or does not typically warrant the application of the enhancement at notes 4 and 5.  Most important, the commentary also directs the sentencing court to compare those examples at notes 4 and 5 in making the sentencing enhancement decision.[24]  Thus, the commentary provides an analytical framework for determining the applicability of the obstruction of justice sentencing enhancement based on a court's comparison of the case before it with the examples in application notes 4 and 5.  It is clear that this framework amplifies and guides the application of

---

[22]See id. at 42-43 (1993).

[23]See U.S.S.G. §3C1.1, cmt. 3.

[24]See id.

§3C1.1.

Application note 4 indicates that the sentence enhancement usually applies when a defendant: (a) threatens or intimidates a witness, co-defendant, or juror; (b) commits or suborns perjury; (c) produces false documents during trial or investigation; (d) destroys or conceals material evidence, unless it is done contemporaneously with arrest; (e) escapes or willfully fails to appear for trial; (f) providing materially false information to a judge; (g) provides materially false information to a law enforcement officer that substantially obstructs or impedes the investigation or prosecution; (h) provides materially false information to a probation officer in respect to a pre-sentence or other investigation for the court; (i) commits one or more of the obstruction of justice violations set forth in Title 18 of the United States Code; and/or (j) fails to comply with an injunction or restraining order of the court.[25]

Conversely, application note 5 indicates that the obstruction of justice sentence enhancement does not apply when a defendant: (a) provides a false name or document at arrest, unless this conduct significantly hinders the investigation or prosecution of the offense; (b) makes false statements, not under oath, unless it significantly impeded or hindered the investigation of the offense;

---

[25]Id. at cmt. 4.

(c) provides incomplete or misleading information during the pre-sentence investigation, so long as it is not a material falsehood; (d) avoids or flees from arrest; and/or (e) lies to the probation or pre-trial services officer about drug use.

A comparison of these two application notes, and a reading of them as a whole, reveals that a defendant's conduct will warrant a sentencing enhancement if he knows or should know that his conduct could have a material impact on the investigation, prosecution, or sentencing of his offense of conviction.[26]  Application note 6 defines "material" as "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination."[27]  Thus, if circumstances do not indicate that the defendant intended for his conduct to have a material impact on the investigation, prosecution, or sentencing of his offense, that defendant's sentence should not be enhanced.[28]

---

[26]Compare § 3C1.1. cmt. 5(b) (ordinarily no enhancement for non-materially false statements to law enforcement officers) with 4(g) (enhancement warranted for materially false statements to law enforcement officers); and 5(c) (ordinarily no enhancment for incomplete or misleading, but not materially false, statements during the pre-sentence investigation) with 4(h) (enhancement warranted for materially false statements or information during the pre-sentence investigation).

[27]U.S.S.G. §3C1.1, cmt. 6.

[28]See, e.g., cmt. 5(a)(ordinarily no enhancement when a defendant provides false identification "where such conduct did not actually result in a significant hindrance to the investigation or prosecution of the instant offense"); cmt. 5(b)(ordinarily no enhancement when a defendant's unsworn

In this case, the record shows that Chavarria could not have believed or intended that his conduct would materially impact the investigation, prosecution, or sentencing with respect to his firearms offense. His verbal threats expressed an intent to inflict harm in the indefinite future to an officer who was neither involved in his actual arrest nor participating in the investigation. Under the totality of the circumstances, the record does not suggest that Chavarria had an intent to hinder the investigation, prosecution, or sentencing related to his offense.

The guidelines commentary "explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice."[29] Yet nothing in the record indicates that the district court ever considered the commentary to §3C1.1, much less gave it authoritative weight, in enhancing Chavarria's sentence.

For these reasons, when the guideline and the commentary are correctly interpreted and applied to the evidence in this case, there is no warrant in the record or basis in law for the

statements to law enforcement officers are false so long as the statements are not "materially false"); cmt. 5(c)(ordinarily no enhancement when a defendant provides incomplete or misleading information to a probation officer so long as it is not a "material falsehood").

[29]See Stinson, 508 U.S. at 44; see also United States v. Vargas-Duran, 356 F.3d 598, 602 (5th Cir. 2004)(en banc)(stating that commentary to the sentencing guidelines is given "controlling weight").

22

enhancement of Chavarria's sentence for obstruction of justice under §3C1.1.