# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-51061

United States Court of Appeals
Fifth Circuit

**FILED**

December 8, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RICARDO ANTONIO GUEVARA,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 2:12-CR-750-1

Before HIGGINBOTHAM, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Ricardo Antonio Guevara pleaded guilty to illegal reentry into the United States after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(1)/(2). The district court sentenced Guevara to seventy months of imprisonment and three years of supervised release. At sentencing, the district court overruled Guevara's objection to a two-level upward adjustment for obstruction of justice as well as Guevara's objection to the court's denial of

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-51061

a downward adjustment for acceptance of responsibility. Guevara now appeals his sentence. For the reasons that follow, we AFFIRM.

## FACTUAL BACKGROUND

On April 14, 2012, Guevara was arrested by United States Border Patrol agents near Eagle Pass, Texas after admitting that he was not a United States citizen and was in the United States illegally. While at the Border Patrol Station, Guevara told agents that he was born in Mexico and was a citizen of Mexico. Guevara signed a Record of Sworn Statement Affidavit, confirming this information. Documents obtained from the United States Border Patrol Prosecutions Office indicated that he was deported to Mexico in May 2011 and that he had a lengthy criminal history. On September 17, 2012, Guevara pleaded guilty to illegal reentry into the United States. During the presentence investigation interview, Guevara indicated that he was actually born in Honduras and was a citizen of Honduras, not Mexico. Guevara signed a Stipulation of Facts letter that confirmed this information.

Based on these false statements made by Guevara during his arrest, the Presentence Investigation Report ("PSR") recommended a two-level upward adjustment to Guevara's offense level for obstruction of justice, pursuant to U.S. Sentencing Guidelines Manual [hereinafter "U.S.S.G." or "Guidelines"] § 3C1.1. The PSR emphasized that Guevara provided this same false information in the past, which led to his previous deportation to Mexico. The PSR found that "[t]hese statements by the defendant have led to the creation of false documents or records by the United States Border Patrol." After explaining these facts, the PSR concluded that "[p]roducing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding, and, providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense, is considered

2

conduct covered under Obstruction of Justice." (citing § 3C1.1 cmt. n.4(C) and 4(G)). The PSR did not further elaborate on how the present case fell into one of those two categories.

Guevara objected to the recommended increase, contending that "he never had the intent to mislead or provide any materially false statement and that his actions did not obstruct or impede an official investigation of this *instant* offense." The government, in response, emphasized that the false information was contained in a sworn statement, "under oath," given to law enforcement. The government contended that the false statement was "likely made with the intent to create a false record and result in deportation to a country other than Honduras."

At the sentencing hearing, Guevara's counsel argued that because Guevara admitted to being an illegal alien, Guevara's false statement about being from Mexico did not impede the prosecution or investigation of the offense. The court pressed defense counsel to provide "evidence" that Guevara's false statements did not impede the prosecution or investigation, stating that "[i]t's not the government's burden to prove obstruction. It's your burden to prove it's not obstruction."

After a lengthy discussion, the court overruled the objection. The court also overruled Guevara's objection to the court's denial of a downward adjustment for acceptance of responsibility, referencing the comment in the Guidelines that only in "extraordinary cases" will a defendant who obstructed justice be entitled to a downward adjustment for acceptance of responsibility. *See* § 3E1.1 cmt. n.4.

After adopting the legal and factual conclusions contained in the PSR, the district court calculated Guevara's Guidelines range as seventy to eighty-seven months. The court sentenced Guevara to seventy months in prison and three years of supervised release. Guevara timely appealed his sentence. He

No. 13-51061

challenges the district court's offense level enhancement, pursuant to § 3C1.1, as well as the court's refusal to adjust downward for acceptance of responsibility, pursuant to § 3E1.1.

## STANDARD OF REVIEW

"We review the district court's legal interpretation of the Sentencing Guidelines de novo and factual findings for clear error." *United States v. Brooks*, 681 F.3d 678, 712 (5th Cir. 2012). A factual finding is clearly erroneous if it is implausible in light of the record as a whole. *See United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999). "When making factual findings for sentencing purposes, a district court 'may consider any information which bears sufficient indicia of reliability to support its probable accuracy.'" *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (per curiam) (quoting *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (per curiam)). Generally, "a PSR bears sufficient indicia of reliability, such that a sentencing judge may consider it as evidence in making the factual determinations required by the Sentencing Guidelines." *Huerta*, 182 F.3d at 364. "A district court, therefore, 'may adopt the facts contained in a [PSR] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable.'" *Harris*, 702 F.3d at 230 (alteration in original) (quoting *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007)). On the other hand, conclusory statements in a PSR are not sufficiently reliable and should not be considered by a district court at sentencing, even in the absence of rebuttal evidence. *See Zuniga*, 720 F.3d at 591; *see also United States v. Elwood*, 999 F.2d 814, 817-18 (5th Cir. 1993) ("Bald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR.").

4

No. 13-51061

Facts in a PSR that do have an adequate evidentiary basis can only be refuted by the defendant with "rebuttal evidence demonstrating that those facts are 'materially untrue, inaccurate or unreliable.'" *Harris*, 702 F.3d at 230 (quoting *Huerta*, 182 F.3d at 364)). "[M]ere objections" will not suffice. *Huerta*, 182 F.3d at 364 (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)).

## DISCUSSION

*A. Did the district court err in placing the burden on Guevara to prove that the obstruction of justice sentencing enhancement did not apply?*

As an initial matter, Guevara argues that the district court legally erred by placing the burden of proof on Guevara to prove that the sentencing level enhancement *did not* apply, rather than requiring the government to prove that the enhancement *did* apply. We agree with Guevara that generally the proponent of a sentencing level adjustment, here the government, bears the burden of establishing the factual predicate justifying that adjustment. *See United States v. Rabanal*, 508 F.3d 741, 743 (5th Cir. 2007). However, we disagree with Guevara's characterization of the district court's statements during the sentencing hearing. The district court's repeated requests for defense counsel to present actual rebuttal evidence, as well as its statements regarding the "burden," must be examined in context. The sentencing hearing transcript indicates that the district court was referring to the general rule that when a defendant objects to a factual finding in the PSR, the defendant must present rebuttal evidence to disprove or discredit the information in the PSR. *See Huerta*, 182 F.3d at 364 ("A defendant's rebuttal evidence must demonstrate that the information contained in the PSR is 'materially untrue, inaccurate or unreliable,' and '[m]ere objections do not suffice as competent rebuttal evidence.'" (*Parker*, 133 F.3d at 329)). In framing his objection, defense counsel focused on one factual finding contained in the PSR—that

5

Guevara's false statements to law enforcement "impeded the prosecution or investigation in his current offense."[1]  The district court properly narrowed its focus to that specific finding and applied the general rule regarding objections to information contained in the PSR.  *See Brooks*, 681 F.3d at 717 (holding that where defendants failed to present rebuttal evidence, the court was allowed to rely on the PSR's finding "that their false statements significantly impeded the investigation").

With that said, Guevara is not required to present evidence to rebut a PSR's conclusory finding that his false statements "impeded" the investigation and prosecution of the instant offense.  *See Zuniga*, 720 F.3d at 591 ("If the factual recitation [in the PSR] lacks sufficient indicia of reliability, then it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence." (alteration in original) (citation omitted)).  The PSR and PSR Addendum referred to § 3C1.1, Application Note 4(G) and stated that Guevara's false statements "constitute providing materially false information to law enforcement, which obstruct or impede an official investigation or prosecution of the instant offense."  *See* § 3C1.1 cmt. n.4(G) (explaining that the enhancement applies when a defendant provides "a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense").  This court previously has explained that when a false statement to law enforcement is used to justify the § 3C1.1 enhancement pursuant to Application Note 4(G), "only material statements that *significantly*

---

[1] U.S.S.G. § 3C1.1, Application Note 4 provides a "non-exhaustive" list of examples of conduct to which the sentencing enhancement applies.  One of those examples, which was cited in the PSR, is when a defendant provides "a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense."  *Id.* at n.4(G).  Impeding an investigation or prosecution is only one element of one example of how § 3C1.1 can be satisfied.  *Id.*

impede the investigation shall qualify." *United States v. Ahmed*, 324 F.3d 368, 372 (5th Cir. 2003) (citing § 3C1.1 cmt. n.4(G)); *see also Brooks*, 681 F.3d at 717 ("False statements which significantly delay an investigation and prosecution, even if not successful in preventing it, may provide a sufficient basis for an obstruction enhancement.").

The PSR elaborates on no evidence that Guevara's false statements about being a citizen of Mexico, rather than Honduras, caused significant impediment to the investigation or prosecution of the offense. As defense counsel pointed out during the sentencing hearing, Guevara admitted that he was not a citizen of the United States and that he was in the country illegally. While his country of citizenship is related to the offense, the PSR does not demonstrate that his false statements caused investigators to expend significant additional time or resources. *See Ahmed*, 324 F.3d at 373 ("[C]ourts have held that statements which do not cause investigators to expend any additional resources on their investigation are not the type of statements which *significantly* impede the investigation."); *cf. United States v. Smith*, 203 F.3d 884, 891 (5th Cir. 2000) (finding obstruction of justice enhancement appropriate where the defendant "sent the FBI investigators on the trail of unknown suspects . . . in order to obstruct the investigation into her own and her co-conspirators' involvement"). The only negative consequence identified by the PSR is that "official investigation documents have been created based on his false statements."[2]

---

[2] The PSR mentions that Guevara *previously* lied about being a citizen of Mexico, which resulted in his earlier deportation to Mexico in 2011. The PSR explains that after Guevara spoke with Border Patrol agents, agents conducted a "[r]ecord check[]," which revealed this previous deportation. In the section of the PSR entitled "Adjustment for Obstruction of Justice," the PSR further discusses false statements tied to that episode, not the instant investigation and prosecution: "Based on the fact that the defendant has indicated to law enforcement officers on numerous occasions that he is a citizen of Mexico, which ultimately resulted in his deportation to Mexico, it is apparent he provided materially false

No. 13-51061

Even if the PSR fails to elaborate an evidentiary basis for its conclusion that Guevara's statement significantly impeded the investigation or prosecution in this case, however, impeding an investigation or prosecution is just one element of one example of how § 3C1.1 can be satisfied. *See* § 3C1.1 cmt. n.4(G). The Application Notes make clear that in some circumstances, a defendant's conduct alone can warrant application of the enhancement. Therefore, we will determine whether, putting aside Application Note 4(G), the district court's application of the two-level adjustment was still appropriate.

B. *Did the district court clearly err by imposing a two level upward adjustment for obstruction of justice under § 3C1.1?*

U.S.S.G. § 3C1.1, entitled "Obstructing or Impeding the Administration of Justice," provides:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by **2** levels.

Application Notes 4 and 5 provide "non-exhaustive list[s]" of examples of the type of conduct to which the adjustment does and does not apply. "[C]omparison of the examples set forth in Application Notes 4 and 5 should assist the court in determining whether application of this adjustment is warranted in a particular case." § 3C1.1 cmt. n.3. Some of these examples are particularly instructive. For instance, the enhancement does not apply if a defendant provided "a false name or identification document at arrest, except

information. Additionally, due to the defendant's false statements to law enforcement officers, official investigation documents have been created based on his false statements."

8

where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense." § 3C1.1 cmt. n.5(A); *see United States v. Rodriguez*, 942 F.2d 899, 902 (5th Cir. 1991) (per curiam) (finding that defendant's use of an alias at his arrest did "not support the adjustment [for obstruction of justice] because the alias did not significantly hinder the investigation"); *see also United States v. Manning*, 955 F.2d 770, 775 (1st Cir. 1992) (finding that defendant's use of false identity at time of arrest did not significantly hinder the investigation, which would have proceeded no differently or faster without the misstatement), *abrogated on other grounds recognized by United States v. Gonsalves*, 435 F.3d 64 (1st Cir. 2006). Similarly, the enhancement does not apply to a defendant who makes a "false statement[], not under oath, to law enforcement officers." § 3C1.1 cmt. n.5(B). On the other hand, the enhancement applies to a defendant who produced or attempted to produce "a false, altered, or counterfeit document or record during an official investigation or judicial proceeding." § 3C1.1 cmt. n.4(C). Notably, this example does not require the defendant's conduct to have any impact on the investigation or prosecution. *See United States v. Milton*, 147 F.3d 414, 417-18 (5th Cir. 1998) (affirming enhancement where defendant directed co-conspirator to sign false affidavit even though affidavit was never used); *Rodriguez*, 942 F.2d at 902 (upholding enhancement because defendant provided the Probation Office with fraudulent birth certificate). The enhancement also applies, as previously explained, if the defendant provides "a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." § 3C1.1 cmt. n.4(G); *see United States v. Phipps*, 319 F.3d 177, 191 (5th Cir. 2003) (affirming enhancement where defendant's misidentification delayed the investigating agent for several months); *cf. Ahmed*, 324 F.3d at 373 (vacating sentence where enhancement was based on defendant's false

No. 13-51061

statement to FBI, noting that "the FBI had to go forward with their investigation as they normally would").

With those examples in mind, we turn to the facts in this case. Guevara concedes that he provided materially false information to Border Patrol agents at the time of his arrest. He told agents that he was born in, and was a citizen of, Mexico, rather than Honduras. He signed a Sworn Statement Affidavit, thereby creating a false document that confirmed this information under oath. *Cf.* § 3C1.1 cmt. n.5(B). The court emphasized that as a result of his false statements in this case and previous cases,[3] "false documents have had to be – were actually created based on the defendant's statement." While not an element of the offense of illegal reentry, Guevara's citizenship is closely tied to the offense and is necessary for deportation purposes. *See United States v. Miller*, 607 F.3d 144, 151 (5th Cir. 2010) (explaining that obstruction of justice enhancement can be based on false statements that might impact "relevant sentencing determinations"). The court found that Guevara acted willfully and concluded that Guevara claimed to be from Mexico "because he was hoping to get VR'd."[4] *See Milton*, 147 F.3d at 418 (affirming enhancement where defendant willfully attempted to obstruct justice). The court also found that Guevara repeated this false information throughout the investigation of the

---

[3] Application Note 1 provides that "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." § 3C1.1 cmt. n.1. There is no evidence in the record that Guevara's false statements in a *previous* case, which led to his deportation to Mexico in 2011, were purposefully calculated to disrupt the investigation or prosecution in the present case. Accordingly, the court could not, and should not, have based its application of the enhancement on those prior false statements. The sentencing transcript reveals, however, that while the court did refer to Guevara's previous statements, it did not base the enhancement on those statements, but rather used them as evidence of Guevara's motive and intent in the instant case.

[4] 8 U.S.C. § 1229c provides that the Attorney General may permit an alien to voluntarily depart the United States and return to his home country without being subject to judicial proceedings. This is sometimes referred to as "VR" for "voluntary return."

instant offense, which is inconsistent with the possibility that he was simply confused or that he misspoke. *Cf.* § 3C1.1 cmt. n.2 ("[T]he court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice."). Finally, the court found that Border Patrol had to do extra work to determine his true citizenship. The court acknowledged that in order for the sentencing enhancement under § 3C1.1 to apply, "it's got to be a much higher burden than they just simply lied to law enforcement officers." The court found "that this is not just lying to law enforcement officers; this rises to the level of significance."

In light of these findings, it was not clearly erroneous for the district court to conclude that Guevara willfully attempted to mislead law enforcement officers and obstruct the administration of justice in this case. Guided by the non-exhaustive list of examples provided in the Application Notes, we find that Guevara's conduct in the present case warranted the two-level enhancement, pursuant to § 3C1.1. *See* § 3C1.1 cmt. n.4 & n.5. We do not reach Guevara's argument regarding the district court's denial of a downward adjustment for acceptance of responsibility, because that argument was contingent on this court finding that the obstruction of justice enhancement was erroneous.

## CONCLUSION

For the above reasons, we AFFIRM the district court's sentence.